## UNITED STATES v. TACOMA.

No. 260, Docket 21341.

United States Court of Appeals, Second Circuit.

Argued June 9, 1949.

Decided July 15, 1949.

Salvatore M. Parisi, of Brooklyn, N. Y., for appellant.

Clarke S. Ryan, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., and Bruno Schachner, Asst. U. S. Atty., both of New York City, on the brief), for appellee.

Before L. HAND, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is a motion in the nature of an application for a writ of error coram nobis, 28 U.S.C.A. § 2255, by a defendant to vacate judgments entered on December 2, 1943, upon his pleas of guilt to two indictments charging him with illegally selling and conspiring to sell narcotic drugs. 21 U.S.C.A. §§ 173, 174; 18 U.S.C.A. § 88, now § 371. Further relief sought is the "correcting" of an order of November 23, 1943, wherein his motion to require that the United States Attorney enter a nolle prosequi on·these two indictments had been denied, and the settling of ·the record of a proceeding of September 29, 1942, at which he had pleaded guilty to still another indictment charging him .with illegal possession of such drugs.

This is a renewal by defendant of previous applications of the same general nature. It is based upon the contention that his plea of guilt to the one indictment in September, 1942, was made because of the agreement of the Assistant United States Attorney in charge, known to and .approved by the presiding judge, that the other two pending indictments would be nolled. Actually they were merely struck off the calendar, and were again called for trial in November, 1943. At .that time defendant's counsel raised this same issue by a motion for an order "nolle prosequing" these indictments on the ground that an agreement for such action was made "between counsel and the United States Attorney." Counsel's supporting affidavit was met by the affidavit of the Assistant United States Attorney in categorical denial. Judge Hulbert denied this motion and then on December 2, 1943, received defendant's pleas of guilt and gave the judgment and sentences now under attack. A motion for the same relief, made on December 22, 1947, was denied by Judge Bright. No appeal was taken from either of these denials of relief. Defendant filed his present motion on May 22, 1948; and .it was thereafter denied by Judge Conger, on the ground that the matter had been put at rest by the prior

proceedings before Judges Hulbert and Bright.

While we agree with Judge Conger's conclusion, some further statement of facts is necessary for consideration of the particular points now stressed by defendant. The three indictments were returned in May, 1942. After the two co-conspirators had pleaded guilty, defendant went to trial in September, 1942, before Judge Holland and a jury on one of the broader indictments. This resulted in a mistrial. The next hearing was on September 29, 1942, before Judge T. Blake Kennedy, visiting district judge from Wyoming. Defendant was presented on the indictment for possession of the drugs, as well as for violation of probation granted on a sentence of 1935. He pleaded guilty to both charges. Judge Kennedy continued his probation on the older conviction, suspended imposition of sentence upon the new indictment, and placed him on probation for two years commencing with the termination of his former probation on August 23, 1945. He was to be subject to the standing probation order of the court with the special condition that "he must remove himself from present neighborhood and shun old associates." As to the other two indictments, each was "marked off calendar. Kennedy, J.," under the same date, according to the clerk's minutes on the cover.

Next there occurred the calling of the indictments for trial in November, 1943, followed by the defendant's motion for this same relief, supported by the affidavit of his counsel. In this the counsel sets forth his negotiations in September, 1942, with the Assistant United States Attorney in charge of the prosecution and states that the Attorney agreed that on the plea of guilt to the one indictment he would move to nolle the others and that he so informed Judge Kennedy before sentence was passed. Then we have the affidavit of the Attorney in answer, which, because of the bitter attack now being made upon him, must be particularly noticed. It contains the Attorney's version of these same negotiations. He agrees with the contention of defendant's counsel that the particular point for consideration was the danger to defendant of a conviction for what would be regarded as a felony in the State of New York, thus subjecting defendant, in the event of a state conviction, to punishment as an habitual offender—though the parties are at odds as to whether an open indictment was then actually pending against defendant in New York, as the Attorney asserts. At any rate, the Attorney expressed a willingness to accept the plea to the lesser charge of possession; but he denies any agreement to nolle the other charges. On the contrary, he asserts that he stated that they would not be affected in any manner, and in answer to counsel's inquiry "advised him that further disposition of the pending indictments would depend on the nature of the sentence imposed on" this indictment. Hence "at the time of imposition of sentence outlined above, no mention was made of the outstanding indictments either by your deponent, or counsel for the petitioner." Further, deponent had consulted with the court reporter, now deceased, prior to his death; and while his notes of the hearing had not been transcribed, yet "upon his reading of said notes to your deponent it was quite clear that no mention was made at the time of sentence concerning any other indictment." And deponent "unequivocally denies" any statements in the moving papers at variance with what he has set forth.

After Judge Hulbert denied this motion on November 16, 1943, the records show that defendant—with his attorney present —pleaded guilty to these two indictments and once more to a charge of violation of his earlier probation (on his 1935 sentence) and received various concurrent and successive sentences, making a total of seven years' imprisonment. Defendant now says that he was then in custody of the state authorities under a ten years' sentence; and the affidavit of his original counsel had asserted that "these cases were restored to the calendar only because this defendant is charged with a violation of law in the State of New York." This does seem reasonable and natural; it would also

explain the concurrent sentence of a year and a day for violation of probation. But it hardly serves to exonerate defendant now or to lighten his sentence.

Thereafter, on December 22, 1945, while he was serving his sentence in a New York penitentiary defendant sent a letter to Judge Kennedy in Wyoming, claiming the existence of the agreement he has relied on, asserting that the minutes of the hearing had been kept from him on the pretense of the stenographer's death, and asking if the judge had any record or recollection of the matter. In a reply of January 2, 1946, Judge Kennedy states that he is "very sorry to inform you that I have no independent recollection of this case," and then goes on to explain that he finds no reference to the case among the notes and memoranda he brought back from the term, though it is not strange that he should fail to remember particular cases after the lapse of time because he disposed of "probably hundreds of them while in New York" and of many hundreds more since. He then adds: "Your story in regard to what happened when the cases were before me sounds reasonable and in accordance with what action I might have taken in the premises but this is not a recollection of those transactions upon which I might base any judicial action at this time." He closes by saying that it is unfortunate that the minutes cannot be made available because of the stenographer's death, but that if they have been preserved, perhaps some other reporter could read them.

It was not until December 22, 1947, that defendant next moved to "settle the record of the proceedings had in this Court House on September 29, 1942 and to vacate the Judgment obtained on December 2, 1943," and for other relief. This is the motion denied by Judge Bright, on the ground that there was no reason to review or reverse Judge Hulbert's denial of the same relief, saying that no additional facts were now stated. Then came the present motion of May 22, 1948, with defendant's lengthy and argumentative supporting affidavit, relying in substance upon three detailed circumstances: the asserted denial to him of the minutes of the September, 1942, hearing; the utter knavery of the Assistant United States Attorney, including the latter's wilful misrepresentations to, and trickery of, the court; and the support thought to be given his position by a later letter of Judge Kennedy, dated March 11, 1948.

Of these, the only one of significance, by itself or as possibly affording some measure of support to the others, is the last. Defendant's extensive communications with various court officials as to the minutes show that they cannot now be found, not that they have been improperly withheld. Further, defendant himself does assert that they were in existence at the time of the hearing in November, 1943, thus indicating their availability to check the statements as to them of the government Attorney, had defendant then sought their production. The charges of deliberate misconduct against the government Attorney are an obvious necessity to the defendant's case; but the proof by a detailed analysis between the Attorney's "Claims" in his affidavit and what "Petitioner Shows by Facts" is quite unconvincing. There are asserted inconsistencies in minor and immaterial matters, resting in the main on unproved assertions. The farfetched nature of the contentions is illustrated by the attempt to find something sinister—or perhaps a guilty conscience—in the Attorney's statement that he consulted the reporter to ascertain what the minutes said before the reporter's death, which occurred as early as June, 1943. It is surprising, however, that defendant's attorney in his brief to us repeats these reckless assertions as though they were established facts.

Judge Kennedy's latest letter is, however, obviously the mainstay of defendant's present attack on his sentences. This letter in fact adds no more to, but reiterates in more detail the views expressed in, the earlier letter which defendant had received long before his second motion, dismissed by Judge Bright. It was in response to defendant's letter of March 2, 1948, asking the judge to answer certain questions: "Why did I plead guilty to one indictment

instead of the three?" "Why were the remaining two indictments marked off the calendar?" And if they were to be returned to the calendar then "would your Honor have subjected me to the terms of Probation?" Its important parts are quoted in the margin.[1] It will be noted that Judge Kennedy begins by reiterating the fact that he has no independent recollection of the case. But having said this, he does say that defendant's story "seems very plausible" in the light of what he did in extending probation, that "it would not seem to be in harmony with the purposes of the Probation Act [18 U.S.C.A. § 3651]" to grant probation while other charges remained undisposed of, and that he could not see "the reasonable basis" of a person pleading guilty to one indictment without disposition of all other pending indictments. And he concludes by emphasizing once again his lack of recollection of the matter.

We do not think this letter adds any new factor to the case beyond the judge's first letter or that either or both together justify vacation of the judgments attacked. As Judge Kennedy is at pains to emphasize, his expression of views adds no facts to the record; it is merely his own rationalizing as to probabilities some years after the event. This too might have been dif-

ferent had he had opportunity to hold a full hearing of both parties with consideration of the affidavit by the government Attorney containing the explicit statement that the reporter's minutes of the original hearing showed no discussion of the matter at all. Of course a judge can step in at any time and exercise control over the prosecutor in situations of this kind; but for a visiting judge, hearing hundreds of such cases during a brief stay in New York, to interfere with the normal course of a local prosecutor would be unusual. And it is certainly normal for a prosecutor, agreeing to a plea to a lesser offense to avoid the prisoner's possible complications with a drastic state law, to wish to hold over the prisoner, to compel compliance with the immediate light sentences given him, the threat of the more drastic prosecutions possible under the other indictments. Hence when the new state prosecution shows also a violation of the federal leniency previously granted, both revocation of probation and pressing of the latent charges will follow in natural sequence. Because of these circumstances and because the judge has no actual facts to contribute, the issue on this motion, as on the former ones, comes back to the question of the veracity of the Assistant United States Attorney.

---

[1] "As stated to you in my former letter, I have no independent recollection of this particular case as there were very many cases disposed of by me during that particular year and prior years when I sat in the Southern District of New York as an assigned Judge.

"Your story of what was supposed to take place seems very plausible in the light of what it appears I subsequently did in the case, i.e., that you already being on probation, the probation was extended for a considerable period of time after the probation which you were then serving would expire. It would not seem to be in harmony with the purposes of the Probation Act to put a person on probation under a charge pending against him when others were to remain undisposed of if the Judge who was extending the probation to a defendant had knowledge that other criminal indictments were still pending against him. I feel certain that when probation was ex-

tended I had some theory on which I felt that probation might be logically entertained for the benefit of the defendant.

"It would seem to logically follow that if some agreement were had between the United States Attorney and counsel for the defendant that it would, under this situation, call for the disposition finally of all pending indictments. I could not see the reasonable basis of a person pleading guilty to one indictment without some disposition being made of all other pending indictments.

"However, as heretofore explained to you, this is said merely for the purpose of showing what the reasonable basis might be for the disposition of these cases but it is not evidence for the reason that it is not within my recollection so that I could in no way either testify or certify as to what the representations were or what the action agreed upon was in connection with the sentence which was imposed by me."

But this was settled by the original proceeding before Judge Hulbert, and resettled by the later proceeding before Judge Bright. Nothing has been presented to justify reversal of these earlier decisions.

Affirmed.