THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LEWIS WOLFE, Defendant.

County Court, Kings County, March 18, 1950.

Miles F. McDonald, District Attorney (William I. Siegel of counsel), for plaintiff.

Nicholas Pecora and Herbert E. Walters for defendant.

GOLDSTEIN, J. The defendant, Lewis Wolfe, was indicted on January 5, 1944, of murder in the first degree, in that the defendant on or about December 30, 1943, willfully, feloniously and of malice aforethought, struck and killed his wife, Paula Mona Wolfe. Thereafter and on November 1, 1944, he was found guilty of murder in the first degree. However, prior to sentence, a petition was presented to this court on behalf of the defendant for a stay of the proceedings on the ground that he was insane at that time.

Pursuant to the provisions of section 658 of the Code of Criminal Procedure, the court entered an order committing the defendant to the division of psychiatry of Bellevue Hospital, to be examined as to his mental condition. Thereafter, the division of psychiatry of Bellevue Hospital submitted a report in writing to the court, dated December 5, 1944, containing the findings and conclusions of the examiners. This report stated that the defendant was presently insane, suffering from a mental disorder diagnosed as schizophrenia, dementia praecox, of the paranoid type; that he was incapable of understanding the charge and proceedings against him or of making his defense

and recommended commitment to the Matteawan State Hospital at Beacon, New York. On December 8, 1944, pursuant to section 662-b of the Code of Criminal Procedure an order was entered in this court confirming the report of Bellevue Hospital and ordering the defendant committed to the Matteawan State Hospital. Said order provided in part, as follows: " Ordered that the report of the Psychiatrists of Bellevue Hospital, dated December 5, 1944, that Lewis Wolfe is presently insane and incapable of understanding the charge and proceedings against him and of making his defense, be and the same hereby is confirmed, and the defendant be and he hereby is committed to the Matteawan State Hospital at Beacon, New York, until he shall no longer be in such state of idiocy, imbecility, or insanity, as to be incapable of understanding the charge and proceedings against him or of making his defense, when he shall be returned to this court for judgment upon the conviction herein." The defendant was committed to the Matteawan State Hospital, pursuant to the provisions of that order.

The conviction of the defendant requires the court to impose a mandatory death sentence under the law. However, in view of the commitment of the defendant to Matteawan, the sentence of the defendant was stayed pursuant to the provisions of section 1120 of the Penal Law, which states in part as follows: " A person can not be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy, or insanity so as to be incapable of understanding the proceeding or making his defense."

On February 9, 1950, Dr. John F. McNeill, M. D., acting in his capacity as Superintendent of Matteawan State Hospital certified to this court that the defendant is no longer in such a state of idiocy, imbecility, or insanity, as to be incapable of understanding the charge now pending against him in this court or of making his defense thereto. On the basis of this certification an order was entered in this court on February 11, 1950, pursuant to the provisions of section 662-b of the Code of Criminal Procedure, directing the Superintendent of the Matteawan State Hospital to deliver the defendant to the Department of Correction, and further directing the Department of Correction to convey the defendant to the Kings County Jail, where he was to remain until legally discharged, or otherwise dealt with according to law. In plain simple language, this meant that if the certification of Matteawan State Hospital of February 9, 1950, was correct, the court would be obliged to sentence the defendant to death.

On February 15, 1950, a hearing was held on a motion to confirm the report of the Matteawan State Hospital. The sole question, which the court was required to decide, was whether the defendant is no longer in such a state of idiocy, inbecility, or insanity, as to be incapable of understanding the charge, or of making his defense thereto. In other words, it was necessary to determine whether or not the defendant possesses the capacity to understand the charge pending against him and to make his defense thereto. This is the factual question which requires a determination by the court.

It is interesting to note that upon motion by the District Attorney that the report of Matteawan State Hospital be confirmed, the defendant also stated that he had no objection to the motion for confirmation. However, at the conclusion of the hearing, the District Attorney withdrew his motion to confirm the report, and when counsel for the defendant thereupon moved such confirmation, the District Attorney took no position either for or against such motion. The hearing was adjourned to obtain further testimony from the doctors attached to the Matteawan State Hospital. Prior to such subsequent hearings, Drs. Solon Charles Wolff and Leon S. Willner, attached to the Matteawan State Hospital, examined the defendant at the Tombs Prison on February 24, 1950. On March 6, 1950, these two doctors testified in this court that they had changed their opinion as to the condition of the defendant on the basis of the statements made by this defendant in this court on February 15, 1950, and the examination made by them of the defendant at the Tombs Prison on February 24, 1950. It was now their opinion that the defendant had suffered a relapse, and he was now in such a state that he was incapable of understanding the charge against him or of making his defense thereto.

Thereupon the court on motion of defense counsel, appointed two independent psychiatrists, Drs. Louis Berg and Laurent Feinier, to examine the defendant as to his present mental condition for the purpose of testifying as to their findings on the adjourned date of the hearing, to wit: March 15, 1950.

On that date, additional testimony was obtained from Dr. McNeill, who confirmed the previous testimony of Drs. Wolff and Willner. However, Drs. Berg and Feinier testified that in their opinion the defendant was now capable of understanding the charge against him and of making his defense thereto.

There does not appear to be any conflict of opinion with respect to the original diagnosis made as to the defendant's mental condition by either the psychiatrists who testified for

the People or those appointed by the court. All agree to the diagnosis of manic-depressive, which was made at the Matteawan State Hospital. There is further no disagreement that the defendant entertains what may be called Messianic ideas. What disagreement there is between the Matteawan authorities and the court-appointed psychiatrists lies chiefly in the interpretation of the scope and the significance of the Messianic idea expressed by the defendant. The Matteawan authorities appear to ascribe the manifestations of the so-called Messianic delusions of the defendant as an indication of a relapse.

The defendant says and has stated in open court that he can prove he is the Messiah. It is his insistence that he possesses a key to the Scriptures, and that this key he was willing to demonstrate to a competent group of witnesses.

Dr. Berg testified that upon the basis of his experience, there are accepted conditions by which a person claiming to be a Messiah could be identified as such. These conditions are: (a) That the Messiah is of divine origin; (b) That he is Heaven-ordained with a mission; (c) That he possesses supernatural powers, such as the passing of miracles, and (d) That the nature of his mission, generally speaking, is to bring salvation and redemption to mankind.

The defendant, however, in his discussions with Dr. Berg, disavowed any supernatural origin, claiming merely to be the son of God, in the same sense that all men are the sons of God; denied having visions or personal meetings similar to the ones described biblically between Moses and God in the Old Testament; denied any supernatural powers; and denied any claim to immortality. Within this circle of thinking, it is Dr. Berg's belief that the defendant can be considered to entertain similar ideas expressed by many men in many places. Specifically, Joseph Smith, who claims to have found the Book of Mormon, and whose cult of Mormonism is derived therefrom made similar claims. Others today, such as Father Divine, entertain similar ideas. Yet this type of individual without arguing as to the truth or falsity of their claims are perfectly competent, and have been found to be able to live in normal society; to show the judgment in business and in their daily life which is consistent with normal behavior however much the majority of individuals differ with them on their status as the Messiah.

It was Dr. Berg's further testimony that even if the defendant Lewis Wolfe claimed to be the Messiah, on all points including vision, mission, Heaven-ordained mission, the possession of

supernatural powers, etc., he would still be, within Dr. Berg's understanding, able to confer with counsel and to understand the nature of the proceedings against him, because in the doctor's opinion, many individuals are known to possess fixed ideas which isolate themselves into the mind of otherwise rational individuals, and which do not interfere with functions other than those associated with their Messiahship or fixed ideas.

The substance of the testimony of Dr. Feinier was to the same effect.

It is well to note that for the better part of at least eight months prior to the issuance of the foregoing certificate by the Matteawan State Hospital authorities, indicating that the defendant was in a recovered state, the doctors who had this defendant under observation during the entire period of his treatment there, were of the opinion that he had recovered, but for reasons of making doubly sure, they withheld such certification for that period of time.

The situation confronting the court poses a very difficult problem. A search of the reported decisions in this State fails to reveal an instance similar to this. As heretofore stated, the factual question to be determined in this proceeding is whether or not this defendant possesses the capacity to understand the charge pending against him or to make his defense thereto. While the opinions of experts are entitled to due consideration, they are not conclusive upon the court. In resolving the factual issue here involved, the court is required to apply legal, not medical tests. (*People* v. *Irwin*, 166 Misc. 751; *Matter of Martin*, 82 Misc. 574.) A clear distinction must be made between an insane person's responsibility for the commission of the crime, as distinguished from the law which precludes trial for a crime. Under our law, an act done by a person who is an idiot, imbecile, lunatic or insane, is not a crime, but one is not excused from criminal liability as an idiot, imbecile, lunatic or insane person or of unsound mind, unless at the time of the commission of the alleged criminal act he was laboring under such defect of reason as either not to know the nature and quality of the act he was doing or not to know that the act was wrong. However, the prohibition against trial, sentence to punishment or punishment, is that one cannot be tried or sentenced or punished while in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense. We are concerned in this proceeding with the latter limitation.

This case illustrates quite graphically the dilemma into which the layman is projected in trying to evaluate the findings of medical experts in a field which is itself subject to so much internal conflict and controversy, and has not as yet come of age. In order to determine the issue presented here, the court finds itself in a position of acting as the judge of the facts at issue, as well as of the law. It has become necessary for the court to apply the test of common sense to the facts precisely as a trial jury would be required to do and because of that the court must weigh the credibility of the evidence (or perhaps in this case a better phrase would be the validity of the evidence, since there is no question of the sincerity of any of the expert witnesses). Furthermore, the court must base its opinion in part upon its direct observation of the actions and demeanor of the defendant himself, just as a jury is permitted to do.

The court has noted that the defendant generally has acted quite rationally throughout these proceedings. Whenever he has had occasion to speak and addresses himself to the questions involved, he has spoken intelligently. His knowledge of the proceedings and what they mean has been remarkably incisive. He appears to have been able to consult with counsel and is well oriented except for his fancy that he can prove he is the Messiah. There is no doubt in the court's mind that he knows and understands the consequences from a decision confirming the original report of the Matteawan authorities.

Over and above this, the court has reviewed and considered minutely and exhaustively the testimony concerning Wolfe's treatment during his incarceration at Matteawan and has been impressed by the nature of the testimony describing his mental condition during the past year at that institution when he was determined to have recovered and to have remained in a recovered state up to the time he was returned to court by the Matteawan authorities with their certification that he was now able to understand the proceedings remaining to be disposed of and to make his defense. This particular evidence has been so impressive that in the court's opinion it tends to vitiate the present revised opinion of the same psychiatrist who made the original certification of recovery. This sudden reversal of opinion is so abrupt as to cause the court to place greater reliance upon the testimony of the court-appointed psychiatrists.

The court is mindful of the fact that if it finds the defendant Wolfe's present condition to be such that he understands the nature of the proceedings remaining to be disposed of and to

make his defense, that it will have no other alternative but to impose the mandatory death sentence. This in and by itself is a burdensome duty. However, upon the basis of all the evidence adduced at the hearings, the court is of the opinion that the defendant is not in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or of making his defense thereto. Therefore, the report of the Matteawan State Hospital, dated February 9, 1950, is confirmed in all respects.

The court directs that the defendant be produced before it on Monday, March 20, 1950, at 10:00 A.M., for sentence on his conviction of the crime of murder in the first degree.