UNITED STATES of America ex rel. Joseph MARCIAL, a/k/a Joseph Johnson, Petitioner-Appellant,

v.

Edward M. FAY, Warden of Green Haven Prison, Respondent-Appellee.

No. 303, Docket 24405.

United States Court of Appeals Second Circuit.

Argued April 11, 1957.

Decided Aug. 16, 1957.

Boris I. Bittker, New Haven, Conn., for petitioner-appellant.

Louis J. Lefkowitz, Atty. Gen., New York City (James O. Moore, Jr., Sol. Gen., Michael Freyberg and Lawrence H. Rogovin, Deputy Asst. Attys. Gen., New York City, of counsel), for respondent-appellee.

Before, CLARK, Chief Judge, and MEDINA, HINCKS, LUMBARD and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

This is an appeal from a denial of a petition for a writ of habeas corpus. Appellant is now serving a 10 to 30 year sentence imposed on him as a second-felony offender by the County Court of Kings County, New York, on a plea of guilty to second-degree robbery. His contention is that the sentence as a second offender is invalid because the prior conviction upon which it was based was had without due process of law. A certificate of probable cause and leave to appeal *in forma pauperis* were granted by this Court on October 23, 1956, and the case was argued to the Court *en banc*.

Appellant's first felony conviction was on January 11, 1935, when the County Court of Kings County sentenced him to a term of 7½ to 15 years upon a plea of guilty to the charge of robbery in the

second degree. On June 6, 1949, he again pleaded guilty to the charge of robbery in the second degree in the same court and was sentenced, as a second-felony offender, to a term of 10 to 30 years' imprisonment. He was transferred from Sing Sing Prison to Green Haven Prison on February 28, 1952, and his maximum sentence expires on March 28, 1982. We are told that appellant's earliest date of parole is January 2, 1959.

Appellant's first attack upon his 1935 conviction was by application for a writ of error *coram nobis* which was denied without a hearing by Judge Goldstein on March 14, 1951. He appealed to the Appellate Division of the New York Supreme Court, Second Department, and applied for leave to prosecute his appeal *in forma pauperis*, which was denied and his appeal was dismissed on December 3, 1951, for lack of prosecution. Appellant made a second attempt to attack the sentence of January 11, 1935, by filing a petition for a writ of habeas corpus, which petition was denied by the Supreme Court, Dutchess County, on May 21, 1952, on the ground that the writ of error *coram nobis* is the exclusive remedy in New York for such attacks. His second application for *coram nobis*, which is the foundation for the petition for habeas corpus in the United States District Court now before us, was denied by Judge Leibowitz, again without a hearing, on December 2, 1955. Further particulars concerning appellant's efforts to review the order of Judge Leibowitz in the New York state courts will appear in the ensuing discussion.

We are met at the threshold with the contention that the application is premature since appellant has not exhausted his state remedies as required by 28 U.S.C. § 2254.[1] Appellant does not deny that he has not obtained an adjudication of his claim by the New York Court of Appeals, the highest court of the state; and appellee for its part does not deny that

appellant is a pauper and has done everything possible under the circumstances to secure such an adjudication.

■ Appellant timely filed a notice of appeal from the order of Judge Leibowitz to the Appellate Division of the New York Supreme Court, Second Department, and petitioned for leave to proceed as a poor person, which was denied. He thereupon applied to the Court of Appeals for permission to appeal but was told that the Court of Appeals had no jurisdiction under such circumstances. He then applied to the Supreme Court of the United States for a writ of certiorari, which was denied. Johnson v. People of State of New York, 351 U.S. 968, 76 S.Ct. 1033, 100 L.Ed. 1487. His petition for a writ of habeas corpus was denied by the District Court, on the ground that, "the petitioner has not exhausted his State Court remedies." We also find that it was denied on the merits, as will appear in a later part of this opinion.

Although there is no statute or rule of court in New York enabling an indigent defendant to appeal to the Appellate Division from a denial of a writ of error *coram nobis*, the Appellate Division is considered to have inherent power to authorize an appeal on handwritten papers without requiring fees. Appellee informs us that it is the practice of the Appellate Division to refuse such permission, even though satisfied that the defendant is a pauper, where it appears that the appeal is without merit. The New York Court of Appeals will not review a denial by the Appellate Division of permission to proceed as a poor person.

In the case at bar, appellee tells us that upon appellant's application to the Appellate Division to proceed as a poor person, "The opposing affidavit did not controvert the allegation of poverty. *A fortiori* the Appellate Division's denial of *forma pauperis* could only have been based on an examination of the merits." Hence, we have this situation: appellant has obtained an adjudication of

---

1. The provisions of 28 U.S.C. § 2254 are set forth in a footnote to the opinion in the companion case of United States ex rel. Roosa v. Martin, 247 F.2d 659.

his claim by the next to highest court of the state, which under state law is not reviewable by the state's highest court unless appellant pays certain fees and expenses which he cannot afford. Yet, despite the concession that appellant is financially unable to proceed further in the state courts, it is urged that there has been no showing "that the applicant has exhausted the remedies available in the courts of the State, or that there is * * * the existence of circumstances rendering such process ineffective to protect the rights of the prisoner" within the meaning of Section 2254.

In all candor we must acknowledge that such was at one time the law in this circuit. United States ex rel. Kalan v. Martin, 2 Cir., 205 F.2d 514; United States ex rel. Rheim v. Foster, 2 Cir., 175 F.2d 772, and Judge McGohey's ruling was fully in accord with those decisions. Although until now we have not expressly overruled these cases, United States ex rel. Jordan v. Martin, 2 Cir., 238 F.2d 623, we have indicated at least a willingness to reconsider them. In United States ex rel. Embree v. Cummings, 2 Cir., 233 F.2d 188, 189, we said, "Where the only state remedies are inaccessible to a prisoner because of his poverty, his failure to pursue those remedies does not bar him from applying to the federal courts for relief." Although that case is perhaps distinguishable, for the Connecticut procedure there under consideration made no provision whatever for a post-conviction remedy *in forma pauperis*, we hold the principle equally applicable here. Section 2254 does not deprive a prisoner of access to the federal courts where his failure to exhaust state remedies is due solely to his financial inability to do so.

Our present holding is in harmony with the policy underlying Section 2254. The requirement of exhaustion exists because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 590, 94 L.Ed. 761. Where, as here, the state courts decline to proceed further, the time is ripe for federal habeas corpus if such is warranted by the factual allegations of the petition.

Furthermore, two recent decisions of the United States Supreme Court have cast doubt upon the constitutionality of our former position. In Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, the Court held that a state may not constitutionally fail to provide an indigent defendant with a transcript needed to prosecute his appeal, since it would be an unreasonable discrimination to provide more affluent defendants with a means of review not available to poor persons. In Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 551, 1 L.Ed.2d 593, the court held that 28 U.S.C. § 1915, which proscribes appeals *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith, "is not final in the sense that the convicted defendant is barred from showing that it [the certificate] was unwarranted and that an appeal should be allowed." We take these decisions as indicating that the Constitution requires that poor defendants must be afforded the same opportunity to secure review of their convictions as are available to those who can afford to pay the necessary costs and expenses of an appeal.[2] To deny poor persons the right to federal habeas corpus on the ground that they did not utilize state procedures beyond their means would clearly conflict with at least the spirit of these decisions.

It may be that the New York Court of Appeals has recently adopted a somewhat more liberal view toward the allowing

---

**2.** It may be noted that neither an indigent defendant nor one possessing the necessary means to pay filing fees, employ an attorney and print his briefs and appendix has any right to require us to entertain a frivolous appeal. In either case this Court has power, on motion by the adverse party or *suo motu*, to dismiss such an appeal.

of appeals *in forma pauperis* and the assignment of counsel to prosecute such appeals; see People v. Kalan, 1 N.Y.2d 922, 154 N.Y.S.2d 980, 136 N.E.2d 920; People v. Kalan, 2 N.Y.2d 278, 159 N.Y.S. 2d 480, 140 N.E.2d 357; but we cannot see how this possible change of view in any way affects the disposition of the case now before us.

We hold that 28 U.S.C. § 2254 is not a bar to the application for the writ in the case at bar.

■ We now turn to the merits. While there is some basis for the contention that Judge McGohey did not pass on the merits, we think the record taken as a whole shows that he did. His memorandum of June 28, 1956 reads:

"The petition shows on its face that the petitioner has not exhausted his State Court remedies. See U[nited]. S[tates]. ex rel. Kalan v. Martin, 2 C[ir]., 205 F.2d 514; U[nited]. S[tates]. ex rel. Rheim v. Foster, 2 C[ir]., 175 F.2d 772.

"The petition is dismissed on its merits. Writ denied."

On further consideration Judge McGohey filed an additional memorandum on July 3, 1956, as follows:

"In my memorandum decision dated June 28, 1956, the petition of the relator dated June 21, 1956 was denied on the ground that the petition on its face shows that the petitioner has not exhausted his State Court remedies. On July 2 I received from the relator a letter dated June 29, 1956 together with what he describes as 'a affidavit in opposition to the one received from Dep. Attorney General Michael Freyberg.' This reply affidavit of the relator is dated June 29, 1956. I have read and considered it. It does not cure the defects apparent on the face of the petition. Accordingly, the decision of June 28 is adhered to."

We think a fair interpretation of these memoranda is that Judge McGohey "adhered" to his previous determination on both grounds, i. e. because of a failure to exhaust state remedies and on the merits. In other words, he reached the conclusion that there was no sufficient showing by appellant of a deprivation of constitutional rights in connection with his first felony conviction, upon which the sentence he is now serving as a second-felony offender was based, to justify a hearing.

If there was a lack of due process when appellant was convicted, the present sentence cannot stand. There has been no hearing on any of appellant's various petitions for relief, either in the state courts or in the United States District Court. Accordingly, we shall now consider appellant's factual allegations, which follow:

"15. Petitioner was indicted by the Grand Jury of Kings County, which was filed on October 10, 1934, alleging Robbery in the First Degree, Grand Larceny in the Second Degree and Assault in the Second Degree. Ind. No. 11238.

"On October 10, 1934, petitioner pleaded not guilty. At the outset petitioner was represented by Joseph B. Margolin, Esq.

"On October 24, 1934, Mr. Margolin moved that the plea of guilty be amended to 'not guilty with a specification of insanity.' Petitioner objected to the amended plea and after a brief period of disputation, Counsel terminated his relationship with petitioner and petitioner never saw him again.

"On December 17, 1934, petitioner appeared in court alone, without counsel, and accepted a proffered plea of Robbery in the Second Degree. He was not advised by the court of his right to court-assigned counsel.

"Petitioner was 22 years of age and possessed a meager education terminating his formal schooling in the 6th grade. He was indigent and was previously employed as a laborer. He was subnormal in intelligence and the legalistic proceed-

ings confronting were too complex for him to competently comprehend. Though he earnestly believed that he was not insane he lacked the normal intelligence to adequately express himself. Robbery is divided into three distinct degrees. It would require an experienced legal mind to properly comprehend the elements distinguishing the degrees of robbery. Petitioner, because of his intellectual disability, was in no position to personally cope with the grave problem confronting him. The lawyer abandoned him and he believed that he was destined to proceed alone. Without counsel and not appreciating his right to court-assigned counsel, he was constrained to accept the proffered plea by the District Attorney. Petitioner did not know the grave consequences of his plea.

\* \* \* \* \* \*

"19. In the instant case petitioner was an ignorant, indigent youth. His intellectual disability precluded him from competently defending himself or capable of intelligently waiving his right to counsel. The indictment was a foreign instrument to him. The crime he pleaded guilty to was beyond his comprehension. He was innocent and because of his poverty and inability to defend himself in person, he was constrained to accept the proffered plea by the District Attorney. The attorney who attended the case at the preliminary proceedings abandoned petitioner at the subsequent vital proceedings. Bewildered and alone, bereft of an adequate education and being inarticulate and incapable of competently expressing himself, petitioner ignorantly yielded to the inexorable current moving toward his doom."

■ True it is that where a conviction in a non-capital case has been based upon a plea of guilty in a state court, a mere allegation that petitioner was of low intelligence and neither had nor was offered a lawyer at the time the plea was entered will not suffice. Cf. Quicksall v. People of State of Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188. There must be some showing that the attendant circumstances were such as to make it appear that there was some essential unfairness in the state court proceedings. United States ex rel. Turpin v. Warden of Green Haven Prison, 2 Cir., 190 F.2d 252. On the other hand, it seems clear to us that the sufficiency of the showing cannot depend upon the use of any precise formula; we must give appellant's allegations a fair and reasonable construction—no more, no less.

We are told by appellee that a Lunacy Commission was appointed on October 24, 1934, and that at the conclusion of the proceedings the Commissioners found "that said defendant was sane at the time of the commission of the alleged crime and is sane at the present time and able to confer with counsel in the proper preparation of his defense." We may assume this to be so, although no such information was placed in the record before Judge McGohey, and we find no occasion now to pass upon the question of whether and to what extent and under what circumstances it may be proper for us to consider matters of record in state courts, in proceedings of the character now before us, which were not before the District Court which made the order appealed from. But the point under discussion is not whether the findings of the Lunacy Commission were supported by sufficient and proper evidence or whether these findings are clearly erroneous or against the weight of the evidence. The sole relevancy of the Lunacy Commission's action, as we see it, is that, supplementing counsel's plea of "not guilty with a specification of insanity," the very fact that the Lunacy Commission was convened, took proofs and made findings, gives color and plausibility to the claim of appellant that he was of sufficiently weak mind and low intelligence at least to require that the court offer him the services of assigned counsel before accepting his change of

plea to guilty. Cf. Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154. All this would follow as a matter of law, or is to be inferred from the interposition of the plea of insanity; so, we repeat, we may assume that the Lunacy Commission was convened and found appellant sane, without taking judicial notice of facts not before the District Judge. Making the assumption, however, far from helping appellee, cuts in the opposite direction. The question before us is not whether at the time of changing his plea appellant was or was not *compos mentis*. "One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel." Massey v. Moore, 348 U.S. 105, 108, 75 S.Ct. 145, 147, 99 L.Ed. 135.

A cursory reading of appellee's brief leaves the impression that appellant was perhaps represented by counsel when he changed his plea to guilty. But we can find no assertion therein that the court records of the Kings County Court show this to be the fact. What it all comes down to is that it does appear that assigned counsel did represent appellant for a time and appellee relies upon a so-called presumption that such representation continued, despite appellant's allegations to the contrary. If, as and when we have a case before us where the records of a state court make a clear showing of relevant matter not before the District Court, and some explanation of why the information was withheld in the first instance, we shall decide the question of whether or not it is proper for us to take judicial notice thereof.

■ There can be no exact and readily applied rule by which the quantum of showing necessary to require a hearing can be measured in these federal habeas corpus cases. But here appellant's allegations make it apparent that his counsel thought appellant was not in his right mind; this, coupled with the fact that the court had already deemed it necessary to assign counsel, the allegations of subnormal intelligence and the other alleged attendant circumstances of the case, including appellant's vigorous insistence that he is innocent of the charge to which he pleaded guilty, make it essential, we think, that there be a hearing to determine the truth and substantiality of appellant's claim of deprivation of constitutional rights in connection with his 1935 felony conviction.

It is provided in 28 U.S.C. § 2243 that:

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

The reason for this provision is evident. A large percentage of habeas corpus applications are submitted by persons who have had no legal training. Indeed, many applicants find it impossible even to state coherently in writing the basic facts concerning the detention complained of. That being so, it would be a mockery of the Great Writ to refuse it on the ground that the applicant had failed to allege clearly enough the facts showing the impropriety of the imprisonment where there remains doubt as to whether a better statement would lead to the prisoner's release. Accordingly, an application for habeas corpus may not be dismissed "unless it appears from the application that the applicant or person detained is not entitled thereto." If there be doubt as to the adequacy or specificity of the application, the statute plainly gives the benefit of the doubt to the petitioner. Such applications are to be determined after the facts of the situation have been developed; they were not meant to be choked off by the petitioner's literary ineptness, reticence, or mistaken notions of the ritualistic requirements of legal documents. The Congress clearly meant to err on the side of too many rather than too few hearings.

That this rule is conducive to determinations by the District Courts of constitutional complaints is a tribute to our judicial system's thorough-going solici-

tude for the rights of each individual, rather than a condemnation of it. The fact that many such determinations do not result in the release of the prisoner does not indict our system's efficiency; it but demonstrates the time and effort we are prepared to devote to keeping to a minimum the miscarriages of justice that occasionally occur despite all precautions. We would not, were the choice ours, eliminate or restrict the writ because of the high percentage of times the detention is shown to be proper. Similarly, we would not refuse a prisoner a hearing on the ground that we think it improbable he will be able to prove his assertions. We must not play fast and loose with basic constitutional rights in the interest of administrative efficiency.

In view of the more recent Supreme Court decisions concerning the duty of the state to provide counsel in criminal proceedings, e. g. Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126; Massey v. Moore, supra; Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127, we cannot say that appellant's charge of denial of due process is not a colorable one. Appellant is entitled to a hearing at which his claim of lack of due process in connection with his 1935 conviction may be adjudicated.

Reversed and remanded.

CLARK, Chief Judge, and Judge LUMBARD dissent in an opinion by Judge LUMBARD.

LUMBARD, Circuit Judge (dissenting).

Whether a defendant has been deprived of his constitutional rights in a state prosecution when, without counsel, he pleads guilty to a felony charge not punishable by death, depends upon whether under all the circumstances the proceedings were so fundamentally unfair as to result in an injustice. Uveges v. Commonwealth of Pennsylvania, 1948, 335 U.S. 437, 441, 69 S.Ct. 184, 93 L.Ed.

127; Bute v. People of State of Illinois, 1948, 333 U.S. 640, 670–677, 68 S.Ct. 763, 92 L.Ed. 986; Gallegos v. State of Nebraska, 1951, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86. The federal courts will not intervene unless and until there has been a showing that the state court prosecution has been tainted with essential unfairness.

Our federal courts are sensitive to the consideration that they should not be too ready to interfere with the state's primary function of administering its own system of criminal justice. Bute v. People of State of Illinois, supra. The mere fact that a defendant has not been represented by counsel is not enough to justify our review of the state court proceedings. This much the majority opinion concedes, citing Quicksall v. People of State of Michigan, 1950, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188. Nor is it enough that the defendant claims that he could not understand the charges and the consequences of his plea. Analysis of the decided cases shows that they have not been decided solely upon the basis of such lack of understanding. As Marcial's petition alleges nothing more than this, and as there is no showing that there was any essential ingredient of unfairness in Marcial's treatment, I am constrained to dissent.

Taking what was in the record before the District Court, we find the following: On October 10, 1934 Marcial was indicted for robbery in the first degree, grand larceny in the second degree and assault in the second degree. To these charges by reason of which he was placed in jeopardy for maximum sentences up to 40 years, Marcial pleaded not guilty. He was represented by assigned counsel at this stage of the case. Marcial further alleges that two weeks later, on October 24, his attorney, Joseph B. Margolin, moved that the plea be amended to "not guilty with a specification of insanity." Marcial states that he objected to this amended plea and after a "brief period of disputation," the length of which we are left to guess, Margolin ceased to represent him.

Marcial states that on December 17, 1934, without counsel he "accepted a proffered plea of Robbery in the Second Degree." At that time Marcial, according to his petition, was 22 years old, and had had only a meager education, which did not go beyond the sixth grade. He alleges that he was "subnormal in intelligence" and that the "legalistic proceedings confronting were too complex for him to competently comprehend."

Nowhere is there any allegation that Marcial was insane or of unsound mind at that time. On the contrary, he asserts that he was not insane at that time. As above stated, he seems to have thought that his assigned attorney should not have amended his original "not guilty" plea to one with specification of insanity. In Marcial's petition for a writ of habeas corpus, filed in the District Court in June 1956, he cites not one single fact or circumstance which casts the slightest suspicion on his mental condition at any time of his life, either during the 22 years before he was introduced to the Kings County Court, or in the 22 years which have since intervened.

Unfortunately it is true that a large proportion of those who stand at the bar of criminal justice are of subnormal intelligence; that is undoubtedly one of the principal reasons why they find themselves there. This fact combined with their indigence and the inherent injustice and unfairness in expecting such unfortunates to defend themselves adequately against criminal charges accounts for the widely expressed concern that they be afforded legal aid. New York State, especially in the City of New York, has made giant strides in furnishing this aid through voluntary organizations such as the Legal Aid Society. But whether such legal aid is furnished or not, our federal courts have not undertaken, and in my view should not undertake, to review state court proceedings in years long gone by, merely because the defendant alleges that he was not able to cope with the legal complexities. Most college graduates of mature years would find these complexities quite beyond them. Indeed most lawyers would be baffled, and their brethren who ascend to the bench are seldom better off. Unless we are to reexamine every state case where no counsel appeared on the plea of guilty, we should draw the line, as we have till now, and inquire only into those cases where it appears that an injustice may have been done through overreaching due in some part to the inability of the accused to understand what was going on.

Here it would seem that there was a bargaining with the District Attorney on the plea, as Marcial states that he "accepted a proffered plea of Robbery in the Second Degree." Thus it would appear that the two other counts were dropped and, instead of facing a maximum sentence of 40 years, Marcial faced a maximum of 15 years. He was in fact sentenced to from 7½ to 15 years. Marcial having already had assigned counsel had chosen to go along without counsel. While it cannot be said on this record whether his bargain was fair or advantageous, there is no statement or claim regarding coercion or overreaching. Absent such coercion or overreaching, we should not reopen a state proceeding twenty-two years after the event, because the defendant lacked assistance he never requested even though he must have known it was available.

Nor should we give any weight to the fact that Marcial's attorney, Margolin, caused Marcial to amend his plea to include a specification of insanity. Such a specification of insanity is well known to be an attempt to evade responsibility for the commission of crimes. Thus it seems to me that the fact of the amended plea is not entitled to any consideration in view of a record which is entirely barren of any supporting allegation.

Nor do I see how the majority can justify an inference of mental incompetence merely from the statement in the brief of the Attorney General that a lunacy commission was appointed pur-

suant to that version of § 658 of the New York Criminal Code which was in force in 1934.[1] The fact is that we have no idea of the reason for appointment of the commission. The appointment took place after the plea of insanity and for all we know, the judge may have granted it merely because of that plea. But any speculation favorable to Marcial from the appointment alone is precluded by the fact that the commission found him "sane * * * at the present time * * *" and under New York law this means it found that he could "understand the proceedings and make his defense." People v. Nyhan, Sup.Ct.Mon. 1916, 171 N.Y.S. 466, 467. Thus the very issue before us was before the commission. It found adversely to Marcial and I do not see how my brethren of the majority can rely on the fact that a commission was appointed for any inference favorable to the defendant on that very question. If anything, these facts would seem to indicate that the plea of not guilty with specification of insanity was a legal maneuver for which there was no basis.

Thus it is difficult to see what there is left for the District Court to do upon a hearing as only one outcome is possible on the basis of what is before us.[2]

To justify federal judicial interference, the majority cites three cases where it was held that the state should have provided counsel. A brief statement of each of these shows that Marcial's petition bears not the slightest resemblance to the situations faced by the state court prisoners in those cases. In Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126, a 21 year old defendant had been sentenced to from 17½ to 35 years. He alleged that he was coerced into a confession after 72 hours of questioning. Without counsel to aid him and on demand of the prosecuting attorney, he pleaded guilty to 3 charges of burglary, 12 of larceny, 8 of forgery, and 2 of false pretense, thus subjecting himself, as Justice Black pointed out, to a maximum sentence of 315 years.

In Uveges v. Commonwealth of Pennsylvania, 1948, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127, the petitioner alleged that when he was 17, without counsel, he pleaded guilty to 4 indictments charging 4 separate burglaries for which he could be sentenced to 80 years imprisonment. His sentence of from 20 to 40 years was reversed.

In Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 154, the state

1. The relevant parts of this section read as follows: "§ 658. Appointment of commission; their proceedings. When a defendant pleads insanity, as prescribed in section three hundred and thirty-six, the court in which the indictment is pending, instead of proceeding with the trial of the indictment, may appoint a commission of not more than three disinterested persons, to examine him and report to the court as to his sanity at the time of the commission of the crime." Laws of 1910, Ch. 557, § 2.

2. On many occasions we have approved district court orders dismissing state prisoner's applications for writs of habeas corpus without a hearing where the record showed no likelihood of establishing the facts necessary to show a violation of due process at such a hearing, and we have done this although there was no prior state or federal hearing on the factual issue. These questions usually arise in motions for a certificate of probable cause under 28 U.S.C. § 2253, and our brief decisions per curiam granting or denying motions are normally not published. Among our more recent holdings on this point were United States ex rel. Jordan v. Martin, 2 Cir., 238 F.2d 623, and United States ex rel. Rheim v. Murphy, 2 Cir., June 13, 1957. We have applied the same standard in appeals and motions involving federal prisoners. See, among others, United States v. Salzano, 2 Cir., 241 F.2d 849; United States v. Tacoma, 2 Cir., 176 F.2d 242; United States v. Page, 2 Cir., 229 F.2d 91. The case of United States v. Hayman, 342 U.S. 205, 209, 219, 72 S.Ct. 263, 96 L.Ed. 232, does not state a different rule; there all parties conceded that a hearing was necessary if the procedure under 28 U.S.C. § 2255 was constitutional.

prisoner had been sentenced to life imprisonment for robbery. He stood trial without counsel and was convicted in a one day trial. For several months prior to his trial he had been confined to the psychopathic hospital of the state prison, part of the time in the part reserved for the most violent inmates. He was removed from a strait jacket only 4 days before his trial. After his conviction he attempted suicide and was recommitted to the psychopathic ward where he was confined for several months more.

The brief recital of these three recent Supreme Court decisions is enough to show that the actions of the states concerned reeked of probable injustice to such a degree that no society jealous of the safeguards of due process of law would permit the convictions to stand. As to Marcial there has been no showing to justify the intervention of the federal courts to reexamine what New York State did when he pleaded guilty without the assistance of counsel in 1934. Indeed Marcial chose to discharge his counsel and make his own bargain with the District Attorney. If we open the doors of the federal courts to Marcial, must we not do so in every case where an indigent defendant has pleaded guilty to felony charges without counsel? Such meddling would seriously, and in my opinion needlessly, disturb the administration of criminal justice in our state courts. Much as we may favor legal aid for the needy, especially when they are accused of serious crimes, we should leave these matters to the action and the conscience of the states, except where there is good reason to believe that a gross injustice may have resulted.

We should affirm the order of the District Court denying the writ of habeas corpus.

CLARK, Chief Judge, concurs in this opinion.