UNITED STATES ex rel. Lewis WOLFE, Petitioner,

v.

J. Edwin LA VALLEE, Warden of Clinton Prison, Dannemora, N. Y., Respondent.

Civ. No. 7700.

United States District Court
N. D. New York.

Jan. 5, 1960.

---

4. See footnote 3, supra.

**940**

Lewis Wolfe, petitioner pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, Raymond B. Madden, Asst. Atty. Gen., of counsel, for United States.

Edward S. Silver, Dist. Atty., Kings County, Brooklyn, N. Y., William I. Siegel, Asst. Dist. Atty., Brooklyn, N. Y., of counsel, for respondent.

FOLEY, District Judge.

This petition for habeas corpus presents again the challenge to the validity of a murder first degree judgment of conviction rendered in the State of New York. These increasing challenges involve matters and determinations of grave importance. As Mr. Chief Justice Warren noted recently in Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, the constitutional determination to be made by the highest authority in these instances is of a delicate nature. Obviously, the determination by the single District Judge with the same import, except the possibility of review, is much more delicate. However, I am guided by settled law as to the duty to make independent evaluation and examination and it is always my effort to follow and conform to such higher policy and philosophy therein expressed.

The procedures I follow herein are the same as in United States ex rel. Caminito v. Murphy, 2 Cir., 222 F.2d 698, certiorari denied 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788; United States ex rel. Wade v. Jackson, 2 Cir., 256 F.2d 7, certiorari denied 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158. An order to show cause was issued to the Attorney General of the State of New York and the District Attorney of Kings County. Answering affidavits have been filed in their behalf. Together with his complete and detailed affidavit, Assistant District Attorney Siegel,—who is now a familiar figure in these challenges to Kings County murder convictions occurring many miles from this District in a teeming metropolitan area,—has also furnished me with his own personal bound volumes of the Records and Briefs of the case. The folio numbers in these volumes are apparently the same as the petitioner cites in his petition to support his contentions, but my references are to the pages

of the volumes of Mr. Siegel. The petitioner has filed, together with his lengthy handwritten petition and reply affidavit, printed copies of briefs submitted to the Appellate Division, Second Department, and the Court of Appeals, New York. Such I also make part of this record because I always find them helpful. It is interesting to note that several of the briefs submitted to the State Appellate Courts are compositions of the petitioner himself, and apparently he argued personally in his own behalf before the Court of Appeals, New York, although experienced counsel were appointed by that highest court of New York to aid and assist him in the briefing and oral argument.

There is no need for me to detail the background and circumstances which give rise to this petition. The history of the crime, trial and court procedures is complete in the affidavit of Mr. Siegel and elaborate court writings fill out a complex and puzzling picture. Judge Goldstein who presided at the murder trial wrote two lengthy and studied opinions. People v. Wolfe (March 1950) 198 Misc. 695, 103 N.Y.S.2d 479; Id. (October 1950) 199 Misc. 413, 102 N.Y.S.2d 12. At page 415 of 199 Misc., at page 13 of 102 N.Y.S.2d of this latter opinion, indication of the bizarre and almost night-marish incidents is given by his statement: "The history of the case has many ramifications and is unique in the annals of criminal jurisprudence." Another example of its odd features is that Dean Andrew V. Clements of Albany Law School, in an article criticizing the New York Rule of Criminal Insanity, singles it out as a case demonstrating "a degree of fumbling" which might be prevented by a different rule in New York as to criminal insanity. Albany Law Review, Vol. 20, No. 2, June 1956, pg. 169.

A summary only is necessary to this decision. The petitioner was convicted by a jury of murder first degree for the killing of his wife on December 30, 1943, by a shoe with a shoe tree in it. The trial lasted fourteen days,

ending November 1, 1944 and at the trial the petitioner was represented by eminent and experienced counsel although it is evident he made continuous efforts to guide, control and circumscribe his defense. The defense was that the petitioner was insane at the time of the alleged crime. Shortly after the verdict in November 1944, and before sentence was imposed, the defendant was committed to a hospital for psychiatric examination, and on December 5, 1944 the psychiatrists reported that he was then insane and recommended commitment to Matteawan State Hospital for the Insane. Over the objection of the petitioner at a hearing on this report, he was committed to such hospital on December 8, 1944, to remain there until cured in the legal sense when he could understand and defend against the judgment of conviction to be imposed upon the jury verdict. He was confined at Matteawan for more than five years and on February 9, 1950 it was certified that he was no longer in such state of insanity as to be incapable to understand or defend under the law of New York. On February 15, 1950, the District Attorney of Kings County moved to confirm the report and for his sentence, and after an extended hearing before Judge Goldstein, the District Attorney withdrew his motion to confirm the report. However, the trial Judge refused to permit the withdrawal of the motion, confirmed the report, and on March 20, 1950 the death penalty was imposed. 198 Misc. 695, 103 N.Y.S.2d 479. The following day, March 21, 1950, the petitioner's attorneys moved for a new trial on the ground that the defendant (petitioner) was insane at the time of trial. In October, 1950, while the defendant was in the death cell at Sing Sing, the trial court granted this motion, set aside the conviction and granted a new trial solely upon the finding that petitioner was insane at the time of the trial within the meaning of Section 1120 of the Penal Law, New York. 199 Misc. 413, 102 N.Y.S.2d 12. This ruling was reversed by the Appellate Division, Second De-

partment (278 App.Div. 967, 105 N.Y.S. 2d 594) and in a short memorandum by the Court it was held that County Judge Goldstein committed basic error by allocating bodies of evidence to the time of the trial although such were given in respect of later or subsequent dates after the adverse verdict. This order of reversal was affirmed by the Court of Appeals without opinion (303 N.Y. 752, 103 N.E.2d 540), and the judgment of conviction and death sentence was affirmed later on the statutory appeal from the judgment of conviction by the Court of Appeals without opinion (304 N.Y. 556, 106 N.E.2d 615). Thereafter, Governor Dewey commuted the death sentence to life imprisonment. In 1959, a motion by the petitioner for reargument as to both previous decisions of the Court of Appeals was denied without opinion (5 N.Y.2d 942, 183 N.Y.S.2d 1025, 156 N.E.2d 923), and in June 1959, certiorari was denied by the United States Supreme Court. 360 U.S. 913, 79 S.Ct. 1301, 3 L.Ed.2d 1263. This maize of legal procedures previous to the recent motions can best be followed in the printed brief submitted to the Court of Appeals, New York, and argued by Attorney Harry G. Anderson, and now made part of this record. None of my comments in this summary or otherwise are to any degree criticism of the handling of this complicated and harrowing experience by New York authorities or its Courts. The attitude and conduct of this petitioner previous to, during and after his trial, particularly toward well qualified lawyers, made it a difficult task to accord him due process under the law of New York. There was present the conflicting psychiatric opinions which had to be weighed and measured in accord with the exact statutory standards of New York as to the criminal defense of insanity. §§ 34, 1120, Penal Law, New York. It is my impression from a reading of the record that a fair and honest result was obtained under trying circumstances in accord with law and justice. To me, it does not seem the province of a federal court to set aside State convictions because we are dissatisfied with the State laws enacted by its Legislature and upheld by its Courts. It may be that the Statutes of New York as to insanity for criminal liability taken from M'Naghten's Case (1843), 10 Cl. & Fin. 200, 8 Eng.Rep. 718 should be changed to a more modern concept, but such change in my mind is for the will of the people of New York expressed by its legislative and executive branches and not for the federal courts. See Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430. As I find it, the federal courts would be only interested if one insane or of defective mental condition stood helpless and alone before the Court, unaided by counsel. Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135; United States ex rel. Marcial v. Fay, 2 Cir., 247 F.2d 662, 668, dissent 669, 672. I also try to adhere to the settled principle that States must have the "widest latitude in the administration of their own systems of criminal justice." Hoag v. State of New Jersey, 356 U.S. 464, 468, 78 S.Ct. 829, 833, 2 L.Ed.2d 913.

With these thoughts, my appraisal of the petition herein is there are only two contentions that might have merit in the federal sense. The first is that a statement taken from the petitioner by an Assistant District Attorney was coerced and improperly admitted in evidence.

This serious claim which becomes more prevalent daily in the federal courts meets the firm opposition that there has not been a clear showing of exhaustion of available state remedies in reference to this claim. 28 U.S.C.A. § 2254. The Court of Appeals, Second Circuit, has emphasized in recent decisions the necessity to raise federal claims on appeal in the State Courts if that is the sole available state procedure for the review of such claims. United States ex rel. Kozicky v. Fay, 2 Cir., 248 F.2d 520; certiorari denied 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067; United States ex rel. Cuomo v. Fay, 2 Cir., 257 F.2d 438, 441. The rigid application of this statutory principle was also recog-

nized by that Court in United States ex rel. Roosa v. Martin, 2 Cir., 247 F.2d 659, 661, citing Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761. See also Brown v. Allen, 344 U.S. 443, 487, 503, 73 S.Ct. 397, 97 L.Ed. 469.

I am unable to find in the record that any question of coercion, physical or mental, was claimed or raised as an issue in the State courts. The only objection by the experienced attorneys at the trial was that the statement was taken from the defendant without him being informed as to alleged constitutional rights against self-incrimination. The petitioner claims he raised the question on pages 32–35 of his personal brief in the New York Court of Appeals, but all I find are a list of alleged omissions corrected by the Appellate Courts and the contention that he was too confused and not clear enough when the statement was taken "to talk about everything". The petitioner also claims that the issue of coerced confession was raised in the Court of Appeals by Mr. Anderson on pages 7 to 14. These pages are preceded by the heading: "Outline of the Case", (pg. 6) and give no indication of claims that the statement was coerced. In fact, the statement is relied upon to show that the defendant was mentally disturbed and had no deliberate or premeditated design to kill his wife. Pgs. 8–12 of Anderson Brief, Court of Appeals. The important part of this brief is that this trained lawyer raised two legal points so enumerated, and neither reached the question of coerced confession.

█ Although I am firmly convinced that the issue of coerced confession is barred by failure to raise it in the State Courts, for my own peace of mind I have read through much of the record as to this point when probably it should not be done. See United States ex rel. Roosa v. Martin, 247 F.2d at page 661. The statement, although taken in the early morning hours, shows courteous, even gentle, intelligent questioning. Vol. 22, pgs. 176–198. The interrogator offered to let the petitioner talk to his brother. Pg. 191. There was no need for force or compulsion because the defendant called the police himself from the hotel room by telephone and told them he had killed his wife in the room, and when they verified the call and came to the room he freely admitted the killing and disclosed how he had done it. The defendant in his own testimony, which covers 448 pages of the printed record, did not complain of any physical or mental compulsion. Vols. 22, 23; pgs. 270–313; 319–726. His only statement in point may have been that he was fatigued (pg. 626) and his defense on the stand was that voices told him to kill his wife, and as a result of one voice, his body was used to strike her. Pgs. 644, 723. In my judgment, there is no semblance in the disputed or undisputed facts here, or the combination of circumstances, to the factual disputes of police brutality, third degree and mental coercion present in the Wade and Caminito cases, supra, and in Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. There was prolonged questioning over a three-hour period, but as far as I know we have not as yet reached the stage where this cannot be done fairly and properly without physical abuse or some obvious form of coercion or official pressures. See United States ex rel. Corbo v. LaVallee, 2 Cir., 270 F.2d 513, petition for certiorari denied, 80 S.Ct. 403; Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523. On the merits, I would reject the claim of coerced confession.

█ The second contention compelling federal scrutiny is that the prosecution wilfully suppressed the evidence of two psychiatrists as to the insanity of the defendant (petitioner) on the night of the crime, and withdrew the petitioner's brother from the stand in such manner as to suppress his examination as to the mental condition of the petitioner at the time of the killing. Petition, pg. 12. This general point of "Wilfull Suppression of Evidence" was raised by the peti-

tioner in his personal brief in the Court of Appeals, New York, upon the appeal from the judgment of conviction (Point III, pgs. 13–20). No such point was raised in the brief of Mr. Anderson to this same Court.

I find nothing in the record or this petition to indicate that such evidence was suppressed from or was not within the knowledge and reach of the petitioner and his attorneys. On page 17 of the Appellant's Personal Brief submitted to the Court of Appeals on this question, it seems that these doctors,—Bellinger and Feigen,—were not called because the petitioner could not get his attorney, Mr. Pecora, to guarantee he would not question these doctors as to any state of mind existing at any time other than the night of the killing, December 29, 1943. As to his brother, Herbert Wolfe, he was clearly available to the defense and it is highly questionable as to the admissibility and extent of his lay impressions that could be received as to the mental condition of the petitioner.

In my judgment, the claim here in this respect again bears no semblance to the settled principle that a conviction must fall if obtained through use of false evidence, known to be such by representatives of the State, or when the State allows false evidence knowingly to go uncorrected when it appears. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9. It would be most difficult to characterize varying medical opinions, so common in the courts, as knowingly false. The claim is denied upon the merits.

For the reasons outlined herein, the petition is denied and dismissed. As in the past, because of the uncertainty of the appellate determination of this type question, I hereby issue and grant a certificate of probable cause. 28 U.S. C.A. § 2253. The bound volumes of the Record and Briefs that I have read shall be returned to Mr. Siegel with the request that he furnish them to the Court of Appeals, Second Circuit, if and when an appeal is taken from this decision. The papers and briefs herein, and a notice of appeal if filed by the petitioner, shall be filed by the Clerk without the usual requirement for the prepayment of fees, and

It is so ordered.