## PALMER *v.* ASHE, WARDEN.

No. 38.  Argued November 5, 1951.—Decided December 11, 1951.

*Louis B. Schwartz,* acting under appointment by the Court, argued the cause and filed a brief for petitioner.

*Leonard H. Levenson* argued the cause for respondent. With him on the brief was *William S. Rahauser.*

Opinion of the Court by MR. JUSTICE BLACK, announced by MR. JUSTICE FRANKFURTER.

This Court has repeatedly held that the Due Process Clause of the Fourteenth Amendment requires states to afford defendants assistance of counsel in noncapital criminal cases when there are special circumstances showing that without a lawyer a defendant could not have an adequate and a fair defense.* Petitioner, a prisoner in a Pennsylvania penitentiary, is serving the second of two five-to-fifteen-year sentences simultaneously imposed after pleas of guilty to state offenses. He sought release in these habeas corpus proceedings filed in a Pennsylvania Court of Common Pleas. His petition alleged that his pleas of guilty were entered without benefit of counsel and that other special circumstances existed which deprived him of opportunity and capacity fairly to defend himself. Answers of the warden and district attorney admitted that petitioner had not been represented by counsel, but asserted that the trial record sufficiently refuted petitioner's allegations. On consideration of the petition and answers the court held that petitioner's allegations, in light of the record, failed to show probable cause for his discharge. The case was then dismissed, thereby depriving petitioner of any opportunity to offer

---

*Uveges* v. *Pennsylvania,* 335 U. S. 437; *Bute* v. *Illinois,* 333 U. S. 640, 677, and cases cited. It was pointed out in the *Uveges* opinion that a minority of the Court believed the Fourteenth and Sixth Amendments require both state and federal courts to afford defendants in *all* criminal prosecutions the assistance of counsel for their defense.

evidence to prove his allegations. The Superior Court affirmed, 167 Pa. Super. 88, 74 A. 2d 725, and the State Supreme Court refused to allow an appeal. The right to counsel being an important constitutional safeguard, we granted petitioner's motion to proceed *in forma pauperis* and his petition for certiorari. 341 U. S. 919.

We must look to the petition and answers to determine whether the particular circumstances alleged are sufficient to entitle petitioner to a judicial hearing. In summary these allegations are: When petitioner was arrested December 20, 1930, the officers told him that he was charged with "breaking and entering the Leaders Dry Goods Store." Later, before a magistrate, he was again told that the charge was "breaking and entering." Petitioner never saw the indictments against him nor were they read to him. He never knew he had been charged with robbery and never intended to plead guilty to such a crime. Taken to the courtroom "the District Attorney informed the Court, that 'the defendant wishes to plead guilty' and in the matter of a minute, more or less, the foregoing sentence was entered after he answered 'Yes' to the Court's query, 'Do you plead guilty to this charge?'" Petitioner "was not represented by counsel, nor offered counsel, or advised of his right to have counsel . . . ." After arrival at the penitentiary, petitioner first learned, according to his petition, that he had been sentenced for robbery and not for the lesser charge of "breaking and entering." The petition also alleges that petitioner when arrested was "a young irresponsible boy, having spent several years in Polk (because he was mentally abnormal), as well as several years in Morganza." This allegation of mental abnormality is supported by the penitentiary warden's answer showing that petitioner had been confined in Polk (a state institution) from August, 1918, to September, 1920, because he was an "Imbecile." The warden's answer also shows that petitioner was born

in 1909; was a state orphanage inmate for a year beginning in 1916; and was in reformatories for larceny or "breaking and entering" for eight of the ten years between the time of his release from the mental institution and the time of the offense for which he is now in prison.

All of the foregoing allegations, if proven, would present compelling reasons why petitioner desperately needed legal counsel and services. Incarceration as a boy for imbecility, followed by repeated activities wholly incompatible with normal standards of conduct, indicates no qualities of mind or character calculated to enable petitioner to protect himself in the give-and-take of a courtroom trial. Moreover, if there can be proof of what he charges, he is the victim of inadvertent or intentional deception by officers who, so he alleges, persuaded him to plead guilty to armed robbery by telling him he was only charged with breaking and entering, an offense for which the maximum imprisonment is only ten years as compared to twenty years for armed robbery. 18 Purdon's Pa. Stat. Ann. (1930) § 2892, § 3041. In this aspect of the case the allegations are strikingly like those that we held entitled the petitioner to a hearing in *Smith* v. *O'Grady*, 312 U. S. 329.

It is strongly urged here, however, that petitioner's allegations are satisfactorily refuted by the trial record, and that the Court should not now look behind that record, particularly in view of the long time that has elapsed since petitioner pleaded guilty. Of course the trial record may relevantly be considered in the habeas corpus proceeding. In some respects petitioner's allegations are refuted by the record. But that record does not even inferentially deny petitioner's charge that the officers deceived him, nor does the record show an understanding plea of guilty from this petitioner, unless by a resort to speculation and surmise. The right to counsel is too valuable in our system to dilute it by such untrustworthy

reasoning. Cf. *Hawk* v. *Olson,* 326 U. S. 271, 278. The judgment dismissing the petition is reversed and the cause is remanded to the State Supreme Court for further action not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Minton, with whom The Chief Justice, Mr. Justice Reed and Mr. Justice Jackson join, dissenting.

Petitioner's contention is that because of the special circumstances of his case the failure to provide him counsel was a denial of due process of law.

The following facts of record were before the Pennsylvania courts: Most of petitioner's life had been spent in Pennsylvania mental and correctional institutions. At the age of eight he was placed in Polk State School, a mental institution, from which he was discharged in less than two years. About a year after his discharge from Polk, he was sent at the age of eleven to Thorn Hill School on a charge of larceny. He was paroled in less than three years, returned in less than three months for delinquency and larceny, and finally discharged two years later. Approximately fourteen months after his discharge from Thorn Hill, he was sent to the Pennsylvania Training School at Morganza for breaking and entering. In two and one-half years he was paroled and in less than one year returned as a parole violator. He was discharged finally about four months later, December 18, 1930, his twenty-first birthday. On that day, the robbery and attempted robbery were committed for which petitioner was indicted, pleaded guilty and was sentenced to the penitentiary on February 18, 1931, for a term of five to fifteen years for each offense, the sentences to run consecutively. These are the sentences attacked by petitioner. He was paroled on the first sentence, attempted armed robbery, on August 26, 1942, to enable him to begin serving the armed

robbery sentence.   He was paroled on his second sentence September 19, 1947, returned as a parole violator April 1, 1949, and has since been incarcerated in the penitentiary.

In this record and petitioner's allegations in his petition for habeas corpus to the state courts must be found the "special circumstances" which would warrant this Court to hold that he had shown sufficient probable cause why his conviction and sentencing, on February 18, 1931, were violative of the Due Process Clause.

Petitioner did not allege that *at the time of sentencing* he was mentally incompetent.   His only allegation concerning mental incompetency is a recital in Paragraph 2 of his petition as follows:

> "Your petitioner, a young irresponsible boy, having spent several years in Polk (because he was mentally abnormal) . . . ."

Yet his discharge from Polk was more than ten years before he entered the plea of guilty now before us.

Petitioner did allege that when he pleaded guilty to the robbery indictments he thought he was pleading guilty to an offense of breaking and entering, as the police had told him when he was arrested that that was the charge. However, at the argument before this Court it was contended by the state, and not denied, that the record showed that at the time he pleaded guilty to the robbery indictments, petitioner also pleaded guilty to breaking and entering Leaders' Dry Goods Store, for which he received a suspended sentence.   Petitioner also alleged that he discovered his mistake for the first time when he was being examined by the penitentiary's psychology department upon his admission.   With that knowledge, he remained silent for eighteen years, a year and a half of which time he was on parole.

A continuous life of crime, extending throughout his entire youth, was the experience of this unhappy boy. One would think that such a propensity for crime would

140

or should alert a court to his mental condition. He did not allege that he was mentally incompetent at the time he was serving almost nine years in Thorn Hill and Morganza, from 1921 until 1930. If he had shown any such infirmity, surely the officials in charge of these two institutions would have had the fact called to their attention and would have had him sent to a mental institution. The officials of Pennsylvania correctional institutions had such duty imposed by statute in 1927, so that the Morganza officials, where he was confined from 1927 to 1930, clearly had such duty as to petitioner. Pa. Laws 1927, No. 281, Purdon's Pa. Stat. Ann., 1931, Tit. 50, § 51. This duty was imposed also upon the court that sentenced him. I cannot believe that the trial court which accepted his plea in open court would have done so if it had known or had any intimation that he was mentally defective. I think the courts of Pennsylvania had a right to assume under all the circumstances of record, which under Pennsylvania practice was before them at the time of sentencing and at the disposition of the rule to show cause in the habeas corpus proceedings, that petitioner was a mentally competent man of twenty-one years at the time he was sentenced.* It was not alleged otherwise.

---

*The majority states that petitioner's allegation of mental abnormality is "supported by the penitentiary warden's answer showing that petitioner had been confined in Polk (a state institution) from August, 1918, to September, 1920, because he was an 'Imbecile.'"

If he were an imbecile, it would seem probable that in his many encounters with the courts they would have observed such low grade of mentality. An imbecile has next to the lowest grade of intelligence among mental defectives, "with an intelligence quotient of from 25 to 49, or a mental age for an adult equivalent to that of a child of from 3 to 7 years." Fairchild, Dictionary of Sociology (1944), 149. Petitioner's brief in the Pennsylvania Superior Court stated that when he was examined at the penitentiary upon his admission he had an IQ of 74.

When petitioner entered his plea of guilty to the robbery indictments on February 18, 1931, did he know he was doing so? He alleged he did not; that he thought he was pleading guilty to breaking and entering Leaders' Dry Goods Store, as the police had told him that was why he was being arrested. Aside from the fact that he pleaded guilty also to the breaking and entering of Leaders' and received a suspended sentence thereon and that he first made known his error more than eighteen years after he discovered it, the courts of Pennsylvania in seeking to determine from the petition and the answers of the warden and district attorney whether there was probable cause for discharging him, took into consideration these further facts of record:

The record revealed that after petitioner was arrested, he was presented before a magistrate on an information filed by a police officer which charged petitioner and two others, separately, with armed robbery of David Brinn, a grocery store owner, and attempted armed robbery of Peter Rosella, also a grocery store owner. The victims appeared at the hearing and testified, together with two other witnesses. The three defendants were charged in two indictments with the armed robbery of Brinn and attempted armed robbery of Rosella, who were in court with several other witnesses, prepared to testify. Their names were endorsed upon the indictments as witnesses against the defendants. Petitioner's plea of guilty in open court to these indictments was also so endorsed.

I think it an allowable judgment for the Pennsylvania courts to conclude that petitioner's allegations, made eighteen years after trial, were improbable in the light of the matters of record, that probable cause did not exist for his discharge, and that the necessity of a hearing was not indicated. The courts had a right to assume, in the absence of allegations or record to the contrary, that petitioner was a mentally competent young man of twenty-

one years, and that his contention, made eighteen years late, that he had pleaded guilty to crimes other than he thought he was pleading to was a bit hard to believe, especially in the absence of an allegation that he did not commit the offenses charged in the indictments to which he pleaded guilty. For aught that appears in his petition, he did commit the offenses—he alleged only that he did not plead guilty to them. To me it appears plain that the record on the whole is against petitioner. Under the practice of Pennsylvania, petitioner is entitled to the writ of habeas corpus only when the court is satisfied there is probable cause for it to issue. *Commonwealth ex rel. McGlinn* v. *Smith*, 344 Pa. 41, 47–48, 24 A. 2d 1, 4–5. On this record it was permissible for the courts of Pennsylvania to conclude that there was no probable cause shown why the writ should issue, and that a hearing was not necessary.