**UNITED STATES ex rel. Nelson RHYCE, Appellant,**

v.

**George A. CUMMINGS, Warden, Appellee.**

**No. 248, Docket 23844.**

United States Court of Appeals Second Circuit.

Argued Feb. 10, 1956.

Decided May 7, 1956.

Nelson Rhyce, pro se.

Thomas F. Wall, State's Atty. for Litchfield County, Torrington, Conn., for appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This is an appeal from an order denying Nelson Rhyce's petition for a writ of habeas corpus entered after a two day hearing where petitioner was represented by assigned counsel and during which Judge Smith heard the testimony of petitioner and ten other witnesses. Rhyce is presently incarcerated in Connecticut State Prison serving a sentence of from 1 to 3 years for burglary and 1 year for theft, both committed on September 20, 1953 at the home of Dr. Winfield Wight in Thomaston, Connecticut. From

this conviction no appeal was taken, but Rhyce attempted to file numerous petitions for writs of habeas corpus in the state court.

Rhyce has alleged his poverty and inability to pay the fees required for filing a petition for habeas corpus in the Connecticut courts. The State of Connecticut has no provision for waiving these fees. The petitioner has therefore exhausted his state remedies within the meaning of 28 U.S.C.A. § 2254. See United States ex rel. Embree v. Cummings, 2 Cir., 233 F.2d 188, and United States ex rel. St. John v. Cummings, 2 Cir., 233 F.2d 187. Since one of the petitioner's claims is that he was improperly deprived of counsel, he has not waived the right to raise his constitutional issues by failing to appeal from his conviction. Williams v. Kaiser, 1945, 323 U.S. 471, 477, 65 S.Ct. 363, 89 L. Ed. 398; see Brown v. Allen, 1953, 344 U.S. 443, 485, 73 S.Ct. 397, 97 L.Ed. 469.

Rhyce states seven grounds for his petition, but only three grounds are pressed on this appeal:

1. That the confession by which the state obtained his conviction was extracted from him by force and barbarous treatment and extended interrogations extending over ten days.

2. That through "guile and deceit" the state made use of certain notes which he had made and thus improperly secured knowledge of his defense at his trial.

3. That he did not have a fair trial because he was without the aid of counsel and was incapable of intelligently defending himself.

To understand the claims here made and the relevance of much that was considered by the District Court we must start with Rhyce's arrest on April 3, 1954 in Torrington, Connecticut on a morals charge. This charge was later reduced to disorderly conduct and on May 11, 1954 Rhyce pleaded guilty and was sentenced to six months in Litchfield Jail from whence he was transferred to the Fairfield State Hospital for several weeks of psychiatric treatment. H. G. Guion, the Public Defender for Litchfield County, represented Rhyce through the plea and sentence on this charge. Rhyce had originally wanted to plead not guilty by reason of insanity. Mr. Guion agreed with Mr. Thomas Wall, the State's Attorney, that Rhyce should be examined by Dr. Arthur Jackson of Waterbury, Connecticut. Dr. Jackson's report to Mr. Wall indicates that Rhyce had a long history of mental illness. He had been a patient in Rockland State Hospital (New York) from January to April of 1943, in Gallinger Hospital (Washington, D. C.) sometime between 1944 and 1947, and in Bellevue Hospital and Matteawan Hospital (New York) from 1947 to 1950. According to Dr. Jackson's report Rhyce had a record of criminal psychotic behavior from the age of 16, but a definite diagnosis of a psychosis had never been established. Dr. Jackson's diagnosis was "constitutional psychopathic personality with perverted sexual urge." He concluded, however, that "there is no question but what the prisoner fully understood what he did on April 3rd and also that he knew what the penalty would be if apprehended."

Prior to Rhyce's plea of guilty on the disorderly conduct charge Drs. Dautrich and Warner, appointed by Superior Court Judge Murphy, examined Rhyce. In their report they certified that he was "temporarily mentally defective," but they refused to certify that he was "so mentally defective that he is unable to understand the proceedings against him." At a hearing before Judge Murphy they testified that Rhyce was a psychopathic personality in need of treatment but that he understood the charges against him.

Before Rhyce's plea of guilty to disorderly conduct he was questioned by state police officers concerning certain unsolved burglaries. Rhyce admitted the commission of numerous burglaries and thefts and he directed the officers to the places which he had burglarized and to a pawn shop in Hartford where he

said he had pawned a watch taken when he entered Dr. Wight's home. The watch was found there and identified by Rhyce.

Finally on April 29, 1954 Rhyce signed a lengthy written confession wherein he admitted numerous thefts including the theft of the watch from Dr. Wight's home. He was thereafter brought to trial on an information charging him with burglary and theft of property valued at more than $50 and less than $2,000, the maximum sentences for which under the Connecticut statutes are twenty years and five years imprisonment, respectively. General Statutes of Connecticut, Rev.1949, §§ 8405, 8401. On several occasions prior to his trial, Judge Shapiro of the Superior Court attempted to assign counsel to Rhyce or to have him secure counsel himself. The services of the Public Defender were made available but these he rejected as he did the opportunity to retain other counsel. In the end Rhyce insisted upon representing himself at the trial and the judge allowed him to do so.

Rhyce was tried before a jury from January 18 to January 20, 1955. At the trial the State's Attorney attempted to introduce in evidence only so much of Rhyce's confession as dealt with the alleged entry into Dr. Wight's home and the theft of the watch, but Rhyce insisted on the entire confession being received, in evidence. He apparently argued to the jury that the confession as a whole was fantastic and therefore untrue as to the offenses for which he was being tried. The jury brought in a verdict of guilty on both counts of the information, and on January 20, 1955 Rhyce received the sentences which he is now serving.

On June 27 and June 28, 1955 Judge Smith conducted a hearing on Rhyce's petition for a writ of habeas corpus. Prior thereto Judge Smith had assigned Mr. Stephen M. Riley as counsel to Rhyce and he ably represented Rhyce through the two day hearing. Judge Smith heard the petitioner and ten other witnesses including Mrs. Dautrich and Warner; he heard all the witnesses whose attendance was requested by Rhyce and his counsel and whose testimony had any relevance to the questions raised. Judge Smith also had before him some of the minutes relating to the examination of the jurors on the voir dire, and the minutes relating to Rhyce's appearances before the Superior Court both on the burglary charge and on the morals charge and his plea to disorderly conduct. Rhyce requested Judge Smith to call for the minutes of his entire trial in the Superior Court. Even though the notes had never been transcribed, Judge Smith indicated his willingness to secure relevant portions of them if Rhyce or his counsel could show their necessity for an adequate consideration of his claims. No such showing was made and Judge Smith refused to secure the minutes. None of the points here urged by petitioner require an examination of a stenographic transcript of all the proceedings. Indeed Rhyce and his counsel were permitted to introduce all evidence which had any possible relevance to the petition. The record shows that Judge Smith was thorough and patient in his examination of the petitioner's claims.

We are of the opinion that Judge Smith correctly rejected the petitioner's contentions: First as to the alleged extraction of a confession by force and barbarous treatment and repeated interrogations extending over ten days, the District Court heard Rhyce and heard the state police officers. The record before us shows that there was no basis whatsoever to this claim and the District Judge was correct in so ruling.

Second, the District Court was also justified in finding that there was no basis for Rhyce's charge that through guile and deceit the state gained knowledge of his defense and made improper use thereof. The evidence showed that Rhyce had left his trial notes with his parents and that they communicated with the state police who looked at the notes and discarded them as being useless. Judge Smith's finding that the notes were not used by the prosecution was well founded.

■■ The third ground for the petition is that Rhyce was without the aid of counsel and incapable of intelligently defending himself. The Fourteenth Amendment does not require that in every state court trial the accused must have the assistance of counsel. Bute v. People of State of Illinois, 1948, 333 U.S. 640, 670–677, 68 S.Ct. 763, 92 L.Ed. 986; Gallegos v. State of Nebraska, 1951, 342 U.S. 55, 64, 72 S.Ct. 141, 96 L.Ed. 86. On the other hand, lack of counsel may, when combined with other circumstances, result in a denial of due process. The petitioner contends that he could not have had a fair trial because, as a mental defective, he was not able intelligently to defend himself. It is true that the mental inadequacy of the accused may necessitate the appointment of counsel in order to satisfy the requirements of due process. Palmer v. Ashe, 1951, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154. But it is equally true that when the right to counsel is explained and an offer to appoint counsel is made, a competent defendant may refuse the offer and thereby waive the right to have counsel appointed. The Fourteenth Amendment does not require under all circumstances that counsel be forced on the defendant, Carter v. People of State of Illinois, 1946, 329 U.S. 173, 174–175, 67 S.Ct. 216, 91 L.Ed. 172. Even under the stricter rule applied in the federal courts such a waiver of counsel may be made. Rule 44, Federal Rules of Criminal Procedure, 18 U.S.C.A.; Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268; Lipscomb v. United States, 8 Cir., 1954, 209 F.2d 831, certiorari denied 1954, 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105; Hines v. United States, 4 Cir., 1953, 203 F.2d 561; Smith v. United States, 5 Cir., 1954, 216 F.2d 724.

We agree with Judge Smith's observation in his memorandum decision that "It may be that in view of his history of mental illness assignment by the court of a special public defender to assist the court in seeing that none of his rights were waived by relator's inexperience might have been desirable." On the other hand it is abundantly clear from everything in the record that Rhyce was fully determined to be his own lawyer and that he knew what was involved in representing himself. Drs. Dautrich and Warner, who had examined Rhyce, found that he was a psychopathic personality and in need of treatment, but they testified both before the Connecticut Court and before Judge Smith that he was able to understand the charges and proceedings against him. After Rhyce refused the services of the Public Defender and other counsel, and asserted that he wished to defend himself, the judge explained very carefully the difficulties which he might encounter. Rhyce nevertheless stuck to his decision. His conduct and testimony before Judge Smith did not indicate that he was unaware of what was going on or laboring under any serious mental deficiency. Rhyce had just been represented by the Litchfield County Public Defender on a morals charge and in his plea of guilty to disorderly conduct and he was fully aware of what was involved in facing the charges of burglary and theft. It is clear that the proof against Rhyce amply supported the conviction.

■ Where it is apparent that a state court has scrupulously attempted to protect the rights of a defendant, we ought not to disturb a conviction merely because, with the advantage of afterthought, we might have handled the situation in a different manner. We agree with the conclusion of the able and experienced District Judge, reached after thorough and patient inquiry, that under the circumstances of this case due process did not require that counsel be assigned to the petitioner against his wishes.

We therefore affirm the order of the District Court.