William Louis **HYATT**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

Civ. A. No. 8162.

United States District Court
D. Colorado.

Nov. 14, 1963.

Ronald F. Flader, Denver, Colo., for petitioner.

Lawrence M. Henry, U. S. Atty., Denver, Colo., for respondent.

DOYLE, Judge.

On August 16, 1963, petitioner filed a self-prepared application for relief pursuant to Section 2255 of Title 28 U.S.C. (although he designates it "Title 18"). In this application petitioner alleges that he is serving a five-year prison term at the Terre Haute, Indiana, Federal Institution. He further alleges that at the time of the perpetration of the crime he was an escapee of the Arizona State Mental Hospital and "was suffering emotional anguish due to family conflicts, extreme nervousness, and obsessed with compulsive and uncontrollable behavior." Further allegations are that he was denied rights immediately following his arrest and did not have an opportunity to consult counsel. One further basis for his petition is that this Court erred in accepting a plea of guilty without assigning counsel and that the court expressed bias in sentencing him to the maximum penalty. He further alleges that at the time of the entry of his plea of guilty he was not competent emotionally and mentally to enter such plea; that having recently escaped from a mental institution the court was compelled to assign counsel before imposing sentence.

The file in case numbered 17037 reveals that the plea of guilty herein was entered on October 26, 1962, and that on that occasion the defendant waived counsel, waived indictment, and entered a plea of guilty, which plea was accepted. Thereafter, on November 16, 1962, the sentence was imposed. In the order of commitment there was a recommendation that the defendant be given a psychiatric examination and treatment as indicated.

Following the filing of the present petition (on August 16, 1963), an order was entered granting the application to proceed in forma pauperis and ordering a hearing. Counsel was then appointed. Thereafter, on August 22 (following an informal hearing with counsel), a further order was entered directing that a psychiatric examination of petitioner be conducted at the Federal Institution at Terre Haute, Indiana. Following receipt of this report (on October 11, 1963), a further order was entered directing the United States Marshal to return petitioner from the Federal Institution at Terre Haute for further hearing. Upon his return to the District of Colorado, a further order was entered directing a local psychiatric examination. This order is dated October 23.

The report of Dr. Edward J. Delehanty, who was commissioned to examine petitioner following his return from Terre Haute, found him to have been sane on October 26, 1962, and thereafter, and capable of understanding the proceedings and of assisting in his own defense. Also before the Court is the examination conducted at the prison. That report was to the effect that while the petitioner was not psychotic at the time of the trial, nevertheless, evidence was present that his judgment was subject to the disruptive influence of an underlying thought disorder whereby he was unable to make rational and adequate judgments at the time of his trial. The evaluation by the psychiatrist at the prison to which he was first committed (El Reno) found that he was not then psychotic but that in the past his insight and judgment appeared to have been poor. The physician, Dr. W. Walter Menninger, was pessi-

mistic about the value of any treatment and expressed the opinion that the big problem was that of custodial care. He recommended that he be transferred to some other prison.

More important than any of the factual material above described is the fact that the pre-sentence investigation furnished the court on the occasion of the imposition of sentence, that is, on November 16, 1962, revealed a long history of personality disorder. There were several evaluations in the pre-sentence report, all of which agreed that while the petitioner was not psychotic, he had a sociopathic personality disturbance. These reports also warned that the petitioner was extremely dangerous being unable to control his impulses, as shown by a long history of violence.

The first question is whether under these circumstances, that is, that the petitioner had recently escaped from the Arizona institution and had a history of sociopathic personality, if not borderline schizophrenia, the Court was justified in sentencing the petitioner without first appointing an attorney. The important consideration here is that assignment of counsel would not have been a mere gesture, because there was a background of evidence from which an argument, at least, could have been made that the petitioner's mental condition rendered him incompetent. That such an issue is under these circumstances cognizable is apparent from the decision of the Supreme Court in Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135. There the defendant alleged that at his trial at which he was not represented, he was insane. In holding that such allegations demanded a hearing the Supreme Court said:

> "* * * We cannot hold an insane man tried without counsel to the requirement of tendering the issue of his insanity at the trial. If he is insane, his need of a lawyer to tender the defense is too plain for argument. We have not allowed convictions to stand if the accused stood trial without benefit of counsel and yet was so unskilled, so ignorant, or so mentally deficient as not to be able to comprehend the legal issues involved in his defense. See Williams v. Kaiser, 323 U.S. 471 [65 S.Ct. 363, 89 L.Ed. 398]; Wade v. Mayo, 334 U.S. 672 [68 S.Ct. 1270, 92 L.Ed. 1647]; Palmer v. Ashe, 342 U.S. 134 [72 S.Ct. 191, 96 L.Ed. 154]. The requirement of the Fourteenth Amendment is for a fair trial. See Betts v. Brady, 316 U.S. 455, 462 [62 S.Ct. 1252, 1256, 86 L.Ed. 1595]. No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court. Even the sane layman may have difficulty discovering in a particular case the defenses which the law allows. See Gibbs v. Burke, 337 U.S. 773 [69 S.Ct. 1247, 93 L.Ed. 1686]. Yet problems difficult for him are impossible for the insane. Any defense is hopelessly beyond reach for an accused who is insane. He stands convicted on a charge which he could not contest and yet for which he may well have had a complete defense."

There appears to be somewhat of a dearth of authority on the present question, that is, whether the pronouncement of sentence following acceptance of a plea of guilty of itself constitutes a violation of petitioner's constitutional rights where the pre-sentence report reveals a history of borderline insanity. It is clear, however, that the accused is now, at a minimum, entitled to a hearing to determine whether he was then capable of intelligently waiving counsel and entering a plea of guilty. See Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148. Here the pre-sentence report showed that the accused had received medical treatment for narcotic addiction, particularly for withdrawal symptoms

during the period that he was incarcerated, just prior to the imposition of sentence. The Supreme Court ruled that the petitioner was entitled to a hearing.

In Ruebush v. United States, 10 Cir., 206 F.2d 810, the defendant entered a plea of guilty following waiver of indictment and a waiver of counsel. This occurred on October 24, 1951. On August 25, 1952, he filed a motion to vacate sentence alleging that he had been legally and mentally insane at the time of the waiver of indictment and was not capable of realizing the significance of his plea of guilty—was not competent to decide whether he needed the assistance of counsel. He further stated that the court did not adequately explain his constitutional rights to him. The pre-sentence report, as in the case at bar, reflected that the defendant had received an honorable discharge from the United States Army and that this followed a Certificate of Disability by a medical board which described his condition as "psychosis, schizophrenia, simple type, manifested by restlessness, tenseness, mild depression, auditory and visual hallucinations, ideas of reference, poor insight in judgment * * *." Following commitment to the Veterans Hospital he was released on the basis of a report that he was not psychotic. A hearing was held at which a psychiatrist testified that the defendant was mentally competent. On the basis of this evidence the Court held that the accused was sane at the time of the trial.

On the question whether the discharge records themselves required setting aside of the plea of guilty, the Court of Appeals concluded that an inquiry into the mental condition of the defendant should have been made at the time but that it would probably have resulted the same as the post-conviction hearing; that the holding of the post-conviction hearing satisfied the requirements of due process. Judge Murrah dissented, stating:

"The trial court had actual knowledge from the probation report before it that the applicant was emotionally unstable and had been suffering from a mental infirmity. This alone was sufficient to give warning to the court of an unusual situation requiring special attention. In these circumstances, the duty of the court to vouchsafe the constitutional rights of the accused is not discharged by 'yes' and 'no' answers to formal questions. See Snell v. United States, 10 Cir., 174 F.2d 580."

The Snell case, cited by Judge Murrah, involved waiver of counsel. There the court failed to fully advise the accused of his right to counsel, but rather allowed him to waive it on the basis of an inquiry whether he desired to do so. There was no discussion between court and counsel as to the nature of the charge or of the possible range of punishment; nor was the accused asked whether in view of the seriousness of the charge, it was his wish to waive counsel. The Court of Appeals, speaking through Judge Bratton, pointed out that it is the duty of the trial judge before whom a defendant appears without counsel, to make a thorough inquiry and to take all steps necessary to insure the fullest protection of the constitutional right at every stage of the proceedings; and further, that it is the responsibility of the trial judge to see that a waiver is an intelligent and competent one. To discharge that duty the court must investigate as long and as thoroughly as the circumstances demand. The statement by the accused that he is informed of right and desires to waive does not end the matter. The legal basis for this was set forth as follows:

"* * * The Sixth Amendment to the Constitution of the United States guarantees to one charged with a crime the right to the aid of counsel in his defense, and under the broad sweep of the constitutional safeguard the accused is entitled to the guiding hand of counsel at every stage of the proceedings. Thomas v. Hunter, 10 Cir., 153 F.2d 834. The right to the aid of counsel is per-

sonal, and, of course, it may be waived. But it must be waived intelligently, understandingly, and in a competent manner. Caldwell v. Hunter, 10 Cir., 163 F.2d 181, certiorari denied 333 U.S. 847, 68 S.Ct. 649, 92 L.Ed. 1130.

"The right to the assistance of counsel is one of substance, and it is not satisfied by mere legalistic formality. Willis v. Hunter, 10 Cir., 166 F.2d 721, certiorari denied 334 U.S. 848, 68 S.Ct. 1499, 92 L.Ed. 1772; Fields v. Hunter, 10 Cir., 167 F.2d 547. * * *"

It is not entirely clear, in view of the decision of the majority in Ruebush v. United States, whether the failure to assign counsel and to order a psychiatric examination prior to the imposition of sentence, once the court receives notice that the accused has a psychiatric history, of itself calls for vacating the judgment. Nevertheless, both the majority and the minority opinion declare that desirable practice dictates that such action should be taken before the court would be justified in pronouncing sentence. Judge Murrah's dissenting opinion goes further: it expresses the view that to fail to take cognizance of the possible incompetence of the accused renders the sentence invalid. However, the failure to appoint counsel under these conditions is a more serious matter as the Court of Appeals points out in Snell the right to the assistance of counsel is one of substance; that in order for the waiver to be effectual it must appear that the trial court sought positively and in depth to ascertain whether the waiver was intelligent and competent.

The sensitive and crucial aspect of the present case is the imposition of sentence notwithstanding notice of the prior psychiatric history of the accused. Those facts render questionable the competency of the defendant to intelligently waive counsel; and secondly, pose a possible defense which the petitioner could not be expected to be aware of, making the as-signment of counsel essential. Thus, it is deemed necessary to declare invalid the imposition of sentence herein and also the acceptance of the plea of guilty. It is unnecessary to conduct a factual hearing looking to a determination of whether the accused was in fact sane or insane at the time of the entry of the plea because the record is certain to show that there was evidence which would have been available to an assigned counsel whereby the sanity of the accused at the time of the alleged commission of the offense could have been placed in issue. This being so, it is proper to invalidate the judgment, to now assign counsel, and to re-arraign the defendant. It is, therefore,

Ordered that the judgment of conviction together with sentence based thereon, be vacated; that counsel be appointed and defendant be re-arraigned.