Lawrence E. WILSON, Warden San Quentin State Prison, Appellant,

v.

Glenn ROSE, Appellee.

No. 20250.

United States Court of Appeals
Ninth Circuit.

Sept. 12, 1966.

Thomas C. Lynch, Atty. Gen. of Cal., Robt. R. Granucci, Michael J. Phelan, Deputy Attys. Gen., San Francisco, Cal., for appellant.

Lin B. Densmore, San Francisco, Cal., for appellee.

Before CHAMBERS, KOELSCH and BROWNING, Circuit Judges.

BROWNING, Circuit Judge, announced the judgment of the Court in an opinion which sets forth his individual views:

The Warden of San Quentin Penitentiary appeals from an order of the district court setting aside appellee's State conviction on the ground that it was obtained in violation of the Due Process Clause of the Fourteenth Amendment. We affirm.

Appellee's petition for habeas corpus challenged his conviction upon the ground that he did not have effective assistance of counsel when he entered his guilty plea, and did not understand the nature of the charge or the consequences of the plea. In Rose v. Dickson, 327 F.2d 27 (9th Cir., 1964) we affirmed the denial of an earlier petition raising the same issues because they had not been presented to the California courts. Appellee then filed a petition in the State court specifically raising these issues,

and the State court denied relief after an evidentiary hearing. In re Rose, 62 Cal.2d 384, 42 Cal.Rptr. 236, 398 P.2d 428 (1965).

The State's criminal charges against appellee arose out of a single incident involving appellee's "girlfriend." The State alleged three offenses: kidnapping (Calif. Penal Code § 207), assault by means of force likely to produce great bodily injury (§ 245), and oral copulation (§ 288a), carrying maximum penalties of twenty-five years, ten years, and fifteen years, respectively. State statutes provide that probation is not available to a persons convicted of an offense involving wilful infliction of great bodily injury (§ 1203), nor to a person convicted of oral copulation where force, duress, or threat of great bodily harm is involved (§ 288a).

Appellee plead not guilty, and a trial date was set. When his case was called for trial, appellee withdrew his prior pleas and plead guilty to the section 207 and section 245 charges. The State dismissed the section 288a charge. The State court denied probation and sentenced appellee to the terms provided by sections 207 and 245, the terms of imprisonment to run concurrently.

The attorney retained by appellee to represent him prior to and at the time of plea, testified on appellee's behalf at the State habeas corpus hearing. The State stipulated that the attorney "testified truthfully, to the best of his recollection and belief." His testimony was not contradicted.

Appellee's retained attorney testified that he concluded that if appellee plead guilty to the sections 207 and 245 charges the section 288a charge would be dismissed and appellee would be placed on probation, and that he so advised appellee. As he testified, "My statement to him was that he would get probation,"; indeed, the attorney testified, he "guaranteed" it. Appellee expressed a wish to employ and consult another attorney before making a decision; but his retained counsel advised him not to do so

because "he was going to get probation."[1]

Appellee's attorney did not tell appellee that it was possible that probation might not be granted, and that appellee's guilty plea might result in imprisonment; he testified, "It never occurred to me." He did not tell appellee that probation was prohibited by statute where the offense involved wilful infliction of great bodily harm; he testified that he was not aware of this provision. He did not advise appellee of the seriousness of the charges against appellee or tell appellee what the possible sentence might be; he testified that he had not read the statutes, and did not know what punishment they provided.

Appellee told his attorney that he believed himself innocent of the charges against him, and twice informed his counsel of his desire to plead not guilty. Nevertheless, appellee's attorney did not discuss possible defenses with appellee;[2] indeed, he did not discuss the facts of the case with appellee at all. Appellee's attorney testified that he listened to appellee's story and to the complaining witness' testimony at the preliminary examination (which appellee told him was not true), but made no effort to investigate either the factual circumstances of the case or the applicable law; he interviewed no witnesses; he did not examine the police reports, or the complaining witness' prior statements to police.

The district court summarized the evidence as follows:

"Throughout all this period * * * counsel for the accused failed in any real sense to advise and consult with the accused; failed to discuss possible defenses or the facts of the case with the accused; failed to pursue any discovery devices available; failed to investigate the case or interview witnesses; and failed to advise the accused of the nature and consequences of a guilty plea.[3] Counsel not only failed to advise the accused that a

1. Appellee's attorney testified that he based his conclusion, and his advice, upon the fact that appellee had consulted him on civil matters over a period of eight to ten years and the attorney knew that appellee, a local automobile salesman, "had been a good citizen up to this time"; that appellee had no prior criminal record; that appellee had been going with the complaining witness for some time and the incident giving rise to the charges grew out of "a quarrel between two friends"; that he had talked with a police officer and a deputy district attorney and they had told him that the section 288a charge would be dismissed and no objection would be made to probation if appellee plead guilty to the remaining charges. Appellee's attorney testified that these officials did *not* say either that they would recommend probation or that probation would in fact be granted.

2. Appellee's attorney testified that in describing the incident appellee said that he had been going with the complaining witness for some time and that he "went to the girl's house and picked her up and they had had a quarrel."

The deputy attorney general asked appellee's attorney, "Now, I take it that while you may not have labeled it as such, that the question certainly occurred to you that there was a question of consent in this case?" Appellee's attorney responded, "What do you mean, consent?"

As the district court pointed out, "This was a kidnapping case wherein lack of consent is an element of the prosecution's case."

3. The district court also pointed out, that the State trial court "on accepting a change of plea from not guilty to guilty failed to make any inquiry into the understanding of the accused concerning the nature and consequences of the plea."

The record discloses that when appellee's case was called for trial in the State court the following colloquy ensued:

"The Court: In the matter of People v. Rose, Mr. .......... (appellee's counsel), Glenn Rose.

"Appellee's Counsel: In this matter, Your Honor, we are changing the plea to the first two counts.

"The Court: Wait just a moment. May I see the——

"Appellee's Counsel: We are changing our plea to the first two counts.

"The Court: Pardon?

"Appellee's Counsel: Changing the plea in the first two counts from not guilty to guilty, the kidnapping and 245.

"The Court: Very well, does the defendant wish to——does the defendant wish to withdraw his plea heretofore entered as to the first and second count

guilty plea might result in a prison sentence, but unequivocally assured the accused that he would be granted probation."

The district court held that appellee's retained counsel *"totally failed to present the cause of the accused in any fundamental respect."* [4] The court concluded that appellee "was not accorded due process of law in the [State] trial court. He was denied fundamental fairness in the disposition of his case. This conviction which has already resulted in incarceration for a period of seven years should not be permitted to stand."

Appellee was entitled to the aid of counsel in determining his plea. "The decision to plead guilty is a decision to allow a judgment of conviction to be entered without a hearing—a decision which is irrevocable and which forecloses any possibility of establishing innocence. * * * [The accused] needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment." Williams v. Kaiser, 323 U.S. 471, 475–476, 65 S.Ct. 363, 89 L.Ed. 398 (1945). See also Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951); Von Moltke v. Gillies, 332 U.S. 708, 720–721, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Hawk v. Olson, 326 U.S. 271, 276, 66 S.Ct. 116, 90 L.Ed. 61 (1945); Jones v. Cunningham, 313 F.2d 347, 352–353 (4th Cir. 1963). Cf. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v.

State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). And formal compliance was not enough; appellee was entitled to reasonably adequate professional aid. Von Moltke v. Gillies, supra, 332 U.S. at 721–722, 68 S.Ct. 316; Hawk v. Olson, supra, 326 U.S. at 274, 66 S.Ct. 116; Jones v. Cunningham, supra. Comment, 112 U. of Pa.L.Rev. 865, 887–89 (1964). Cf. Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir., 1962).

It did not comport with minimal standards of professional service for counsel to advise appellee to plead guilty on the ground that probation was "guaranteed" without any assurance that probation would in fact be granted, without checking the statute which may have prevented probation for one of the offenses to which a guilty plea was advised, without any effort to determine what sentence was possible if probation were denied, and without any inquiry, legal or factual, into the merits of appellee's assertions of innocence. "Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his *informed* opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322 (1948).[5] (Emphasis added.)

There is a suggestion that an agreement to plead guilty to the sections 207 and 245 charges in exchange for the dismissal of the section 288a charge was within the broad range of permissible

---

of the information? Will you answer? You understand, Sir? Do you wish to withdraw your plea as to the first and second count of the information?

"The Defendant: Yes.

"The Court: Will you re-arraign the defendant as to counts one and two.

"The Clerk: Glenn Rose.

"The Court: Under which section of the code are you proceeding as to the first count, Mr. McCreary? It isn't in here. The clerk suggests——

"Appellee's Counsel: I think it is 207."

The defendant then entered his formal plea of guilty and the prosecutor moved for a dismissal of the oral copulation charge.

At a subsequent hearing probation was denied by the trial judge, and appellee was sentenced to the terms prescribed by law on both counts. Nothing was said at the second hearing regarding the nature and possible consequences of appellee's guilty plea.

4. The emphasis appears in the district court's order.

5. Our decision in Pinedo v. United States, 347 F.2d 142 (9th Cir., 1965), is consistent with the principles stated in the text. We upheld the district court's factual determination that Pinedo in entering his guilty plea had effective assistance of counsel.

professional choice, even though shown by the ultimate event to have been ill-advised. In re Rose, 62 Cal.2d 384, 42 Cal. Rptr. 236, 398 P.2d 428 (1965). But a plea of guilty to the section 245 charge could have barred probation as much as a plea of guilty to the section 288a charge, and the maximum sentence on the section 207 charge was twenty-five years, whereas the maximum sentence under section 288a was fifteen years. Moreover, the choice made by appellee's counsel was not based upon a weighing of these risks. It rested upon his personal assumption that probation was "sure."

It is undisputed that appellee himself was never consulted as to the supposed strategy. In the course of the State habeas corpus hearing the presiding officer asked appellee's counsel: "You didn't discuss the relative merits of taking a calculated risk that he might, or could be denied probation on the other two counts, but that it would be worth it, at least, if he gets the 288a dispensement?" Appellee's counsel answered, "No, I did not."

The aid of counsel in entering a guilty plea may of course be waived. But "[t]o be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323 (1948). All other matters aside, it is uncontradicted on the record that appellee was "guaranteed" that the product of his plea would be probation, and was not advised, either by counsel or by the court, that his plea would expose him to imprisonment, possibly for as long as thirty-five years.[6]

The State argues that even though appellee did not have effective assistance of counsel, his conviction must nonetheless stand, first, because collateral attack upon the judgment is precluded by appellee's guilty plea and, second, because even if appellee were denied due process of law, that denial was not the result of any action or inaction by the State.

A guilty plea does not immunize a judgment from a collateral attack challenging the constitutional validity of the plea itself. *Palmer, Von Moltke* and *Hawk,* supra, involved collateral attacks based upon total lack of counsel when the accused plead guilty. See also Wright v. Dickson, 336 F.2d 878, 883 (9th Cir., 1964). *Von Moltke* and Cunningham v. Jones, supra, and also Wilson v. Reagan, 354 F.2d 45 (9th Cir., 1965), sustained collateral attacks following guilty pleas where, as in this case, counsel was available but his performance was inadequate. See also Hale v. Wilson, 364 F.2d 906 (9th Cir., 1966).

Appellee's right was not diminished, nor his remedy barred, for want of "State action." Appellee was not charged, convicted and punished by private individuals, but by the State. It was the State which sought to deprive him of his liberty, and he was entitled to the effective assistance of counsel in meeting the State's challenge. Since he lacked such assistance, and did not waive it, he was deprived of his constitutional right, and is entitled to a remedy.

As noted above, it makes no difference that appellee had ineffective counsel, rather than no counsel at all.

It also makes no difference whether counsel was retained or appointed by the court, or whether counsel's inadequacy should have been apparent to the court and prosecutor at the time or was made evident only by subsequent disclosures. This is clearly the federal rule. Randazzo v. United States, 339 F.2d 79, 81 (5th Cir., 1964); Munich v. United States, 337 F.2d 356 (9th Cir., 1964); Porter v. United States, 298 F.2d 461, 463–464 (5th Cir., 1962); Kyle v. United

---

**6.** As we held in Munich v. United States, 337 F.2d 356 (9th Cir., 1964), "In our opinion one who, at the time of entering a plea of guilty, is not aware of the fact that he will not be eligible for probation or parole, does not plead with understanding of the consequences of such a plea." 337 F.2d at 361.

States, 263 F.2d 657 (9th Cir., 1959); Craig v. United States, 217 F.2d 355, 359 (6th Cir., 1954). Since it has been settled that the effect of Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was to render "the Sixth Amendment's right to the assistance of counsel * * * obligatory upon the States," Pointer v. State of Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965), it is the rule applicable in State prosecutions as well.[7]

A contrary rule would have the anomalous effect of diminishing only the rights of those who undertake to bear the cost of their own representation, for it is clear that defendants have a remedy if they leave it to the State to compensate counsel. Brubaker v. Dickson, 310 F.2d 30, 32–33 (9th Cir., 1962).

But the true basis for the rule is to be found in the reason which underlies the right to assistance of counsel itself. It is embodied in the Sixth Amendment in "realistic recognition of the obvious truth that the average defendant does not have the professional skill to protect himself when brought before a tribunal with power to take his life or liberty." Johnson v. Zerbst, 304 U.S. 458, 462–463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938). It is incorporated in the Due Process Clause of the Fourteenth Amendment because, "without the aid of counsel," the accused "lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against

him." Powell v. State of Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). In short, effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments because it is "essential to a fair trial," Pointer v. Texas, supra, 380 U.S. 403, 85 S.Ct. 1065; Gideon v. Wainright, supra, 372 U.S. 342, 83 S.Ct. 792.[8]

Clearly effective assistance of counsel is equally "essential to a fair trial" whether or not the court or the prosecutor participates directly in depriving the accused of that aid. In either case the accused is equally lacking in the professional skill and knowledge necessary to the protection of his life or liberty. There may be less reason to charge the State with knowledge of the deficiency in the one case than the other. But if in subsequent collateral proceedings the accused discharges his burden of proving that he was in fact without effective assistance of counsel he has shown, absent waiver, that the procedings which resulted in his imprisonment were fundamentally unfair, and he is therefore entitled to a remedy.

The judgment is affirmed.

CHAMBERS, Circuit Judge (concurring).

I am always depressed when, because of our concepts of the law, we have to overrule a coordinate court such as the Supreme Court of California, which is a leader in zealously protecting the rights of the individual.

7. Even prior to *Pointer*, commentators were in general agreement that this represented the preferable, and probably the majority, view applicable to both State and Federal prosecutions. See, e. g., 18 Vand.L.Rev. 1920, 1932–33, 1936 (1965); 59 N.W.L.Rev. 289, 296–301 (1964); 39 Wash.L.Rev. 819, 832, 835 (1964); 49 Va.L.Rev. 1531, 1535, 1554–58 (1963).

8. The rule requiring the aid of counsel (like the rule requiring exclusion of an involuntary confession) is thus distinguishable from other rules which do not affect "'the very integrity of the fact-finding process' [or avert] 'the clear danger of

convicting the innocent,'" Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), such as the rule requiring the exclusion of evidence obtained through unreasonable search and seizure, the rule forbidding comment on a defendant's failure to testify, or the rule excluding statements obtained during in-custody interrogation not complying with the procedures established in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

But I cannot understand what was done here on the state side. The California Supreme Court appointed a retired Superior Court judge, Jordan L. Martinelli, to go to San Quentin penitentiary and hold a hearing. His report, in gentlemanly terms, means he simply did not believe the story of Rose's trial counsel. He saw the witness. I have read the transcript. Even on the paper transcript, I have my doubts about his testimony. I see a picture of a lawyer stultifying himself, who cannot say no to those imploring him. The burden of proof was on Rose.

But the Supreme Court of California announces it is not bound by the referee. Then, in effect, it says it will accept Rose's version of the facts. This done, it seems to say the facts still amount to nothing. In Re Rose, 62 Cal.2d 384, 42 Cal.Rptr. 236, 398 P.2d 428.

On the federal hearing, I think, if it desired, the district court could have made its own exploration and determination of the facts on representation or nonrepresentation. It did not. At the conclusion of the federal hearing (not the state's hearing) an assistant attorney general stipulated in writing with present counsel for Rose that "said [trial counsel] testified truthfully to the best of his recollection and belief at [the state referee's hearing]." So any reason for a new evidentiary hearing was removed.

In view of the concession, I suppose our district court was right. Judge Browning's opinion, I think, sweeps too broadly, but I do concur in the result.

Judge Browning's opinion would get us a dozen cases where we would have to distinguish the Rose case.

KOELSCH, Circuit Judge (concurring).

I concur in the result stated in Judge Browning's opinion and in the views expressed by Judge Chambers in his special concurrence.